(August 2, 1922.)

FRANK VAUGHAN, Appellant v. ALFRED P. HOL-
LINGSWORTH, WILLIAM A. HOLLINGSWORTH,
E. C. HOLLINGSWORTH, SARAH J. DARRAH, and
MARY L. COOK, Respondents; ARIZONA MITCHAM,
JOHN CARLYLE MILLER and ELLA RILEY,
Cross-plaintiffs and Respondents.

[208 Pac. 838.]

COMMUNITY PROPERTY—DEED TO HUSBAND—CONSTRUCTION—INTENTION
AND CONDUCT OF GRANTEES—ADVERSE POSSESSION.

1. All property acquired by either spouse during coverture is
presumed to be community property and the burden is upon him
who asserts it to be separate property to show such fact by a
preponderance of the evidence.

2. The main purpose in the construction of deeds, as of other
contracts, is to give effect to the intention of the parties, and
this intention is gathered from the language of the deed as such
language is explained by the attendant circumstances and· the
relation of the parties.

3. Before adverse possession by one tenant in common against
another can begin, the one in possession must, by acts of the
most open and notorious character, clearly show to the world, and
to all having occasion to observe the condition and occupancy of
the property, that his possession is intended to exclude, and does
exclude, the rights of his cotenant.

APPEAL from the District Court of the Tenth Judicial
District, for Nez Perce County. Hon. Wallace N. Scales,
Judge.

Action to quiet title. Judgment for cross-plaintiffs
Mitcham, Miller and Riley. Plaintiff appeals. *Affirmed.*

Publisher's Note.

3. Adverse possession of common property, see notes in 9 **A. L. R.**
423; **Ann. Cas.** 1915A, 746; 109 **Am. St.** 609.

Eugene A. Cox and Noel B. Martin, for Appellant.

The deed from Oylear to Alfred P. Hollingsworth and his heirs by Mary E. Hollingsworth, his wife, conveys title of the whole estate to the grantee named and the grantees designated. (*Bodine's Admr. v. Arthur,* 91 Ky. 53, 34 Am. St. 162, 14 S. W. 904; *Sullivan v. McLaughlin,* 99 Ala. 60, 11 So. 447; *Fanning v. Doan,* 128 Mo. 323, 30 S. W. 1032; *Reeves v. Cook,* 71 S. C. 275, 51 S. E. 93; *Fletcher v. Tyler,* 92 Ky. 145, 36 Am. St. 584, 17 S. W. 282; *Smith v. Upton,* 12 Ky. Law Rep. 27, 13 S. W. 721; *Tinder v. Tinder,* 131 Ind. 381, 30 N. E. 1077; *Cullens v. Cullens,* 161 N. C. 344, 77 S. E. 228, L. R. A. 1917B, 64.)

The parties, having by their acts, silence and acquiescence placed a construction on the deed from Oylear, the construction, not being repugnant to any rule of law, will be followed by the court. (*Dakin v. Savage,* 172 Mass. 23, 51 N. E. 186; *Huff v. Miniard,* 24 Ky. Law Rep. 2272, 73 S. W. 1036; *Kamer v. Bryant,* 103 Ky. 723, 46 S. W. 14.)

The Oylear deed shows on its face that the property did not vest in the community, and the estate conveyed passed to the grantee named and grantees designated. No evidence was introduced to rebut this presumption or show a different intention. (*McCutchen v. Purinton,* 84 Tex. 603, 19 S. W. 710; *Baker v. Baker,* 55 Tex. 577; *Morrison & Hart v. Clark,* 55 Tex. 437; *Hatchett v. Conner,* 30 Tex. 104; *Swain v. Duane,* 48 Cal. 358; *Sanchez v. Grace Methodist Episcopal Church.* 114 Cal. 295, 46 Pac. 2; *Letot v. Peacock* (Tex.) 94 S. W. 1121.)

The extent of the estate purported to be conveyed characterizes the entry and subsequent possession, and shows that they were made under claim to the whole of the estate and with intent to oust others asserting an interest. (*Wilson v. Linder,* 21 Ida. 576, Am. Cas. 1913E, 148, 123 Pac. 487, 42 L. R. A., N. S., 242; *Elder v. McClaskey,* 70 Fed. 529, 17 C. C. A. 251; *Hall v. Law,* 102 U. S. 461, 26 L. ed. 217; *Christie v. Gage,* 71 N. Y. 189; *Greenhill v. Biggs,* 85 Ky.

155, 7 Am. St. 579, 2 S. W. 774; *Little v. Crawford*, 13 Ida. 146, 88 Pac. 974.)

A tenant in possession may disseise his cotenants either by direct notice of adverse claim or by unequivocal acts from which notice will be presumed. (*Parsons v. Sharpe*, 102 Ark. 611, 145 S. W. 537; *Allen v. Morris*, 244 Mo. 357, Ann. Cas. 1913D, 1310, 148 S. W. 905; *Clarke v. Dirks*, 178 Iowa, 335, 160 N. W. 31; *Smith v. Barrick*, 41 Cal. App. 28, 182 Pac. 56; *Hahn v. Keith*, 170 Wis. 524, 174 N. W. 551; *Hynds v. Hynds*, 253 Mo. 20, 161 S. W. 812; *Mathews v. Baker*, 47 Utah, 532, 155 Pac. 427; *Carr v. Alexander* (Tex. Civ.), 149 S. W. 218; *Wilson v. Hoover*, 154 Ky. 1, 156 S. W. 880; *Winterburn v. Chambers*, 91 Cal. 170, 27 Pac. 658.)

Benjamin F. Tweedy and E. W. Stephens, for Respondents.

The heir clause in the deed merely attempts to limit the inheritance or succession to the land, and in no way prevents the whole fee-simple title vesting in the named grantee by force of the deed itself. The fact that the word "heirs" immediately follows the named grantee conclusively proves that a limitation was only intended, and nothing more. (C. J., sec. 279, p. 300; *Howe v. Howe*, 94 Kan. 67, 145 Pac. 873; *Lane v. Utz*, 130 Ind. 235, 29 N. E. 772; *Tipton v. La Rose*, 27 Ind. 484; *Bonnell v. McLaughlin*, 173 Cal. 213, 159 Pac. 590; *McNeer v. Patrick*, 93 Neb. 746, 142 N. W. 283; *Cox v. Newby*, 101 S. C. 193, 85 S. E. 369; *Garrett v. Wiltse*, 252 Mo. 699, 161 S. W. 694.)

The clause, as a limitation of the inheritance, is absolutely void, and cannot set aside the Idaho statutes. (*Howe v. Howe, supra.*) Mary E. Hollingsworth and her heirs cannot be affected at all by the heir clause, for she is not named as a grantee in the Oylear deed. She gets her title to one-half of the land by the law vesting it, and not the deed. (*Ewald v. Hufton*, 31 Ida. 373, 173 Pac. 247.)

It requires very strong evidence and facts and circumstances to establish adverse possession against tenants in

common, especially where they are related to each other by blood or by marriage as in the instant case. (1 Cyc. 1071, 1080.)

Cross-plaintiffs accepted their distributive part of the effects of their mother on her death in accordance with the memorandum left by her, and, having so accepted, and having failed to probate their mother's estate, they cannot be now heard to assert their stale claim. (*Ryan v. Woodin,* 9 Ida. 525, 75 Pac. 261.)

DUNN, J.—In December, 1903, Alfred P. Hollingsworth and his wife Mary E. Hollingsworth purchased from Louis L. Oylear the N. ½ of the NW. ¼ of sec. 24 and the SE. ¼ of the SW. ¼ of sec. 13, T. 37 north, range 2 west, B. M. Pursuant to agreement between the purchasers and by their direction the said Oylear and his wife executed a deed for said tract, the granting clause of which read to "Alfred P. Hollingsworth and his heirs by Mary E. Hollingsworth, his wife." The *habendum* clause of said deed read, "unto the said Alfred P. Hollingsworth and his heirs by Mary E. Hollingsworth, his wife, and assigns forever," and further, "grantors above named do covenant to and with the above named grantees and assigns."

In January, 1905, Alfred P. Hollingsworth and his wife conveyed to William A. Hollingsworth by warranty deed the W. ½ of the N. ½ of the NW. ¼ of said sec. 24. In December, 1909, Mary E. Hollingsworth died and in January, 1916, Alfred P. Hollingsworth conveyed the remainder of said land to William Hollingsworth, his son, William Hollingsworth and William A. Hollingsworth being the same person. In September, 1916, Sarah J. Darrah, a sister of William Hollingsworth, executed a quitclaim deed to him for the NE. ¼ of the NW. ¼ of said sec. 24 and SE. ¼ of the SW. ¼ of said sec. 13. In May, 1919, Sarah J. Darrah, Mary L. Cook and E. C. Hollingsworth, sisters and brothers respectively of William Hollingsworth,

executed a quitclaim deed to William Hollingsworth for all
of the tract first above described, and in June, 1919,
William A. Hollingsworth and his wife conveyed by war-
ranty deed to Frank Vaughan, the appellant herein, all of
said land first above described. In January, 1920, appellant
began his action to quiet title of the land so conveyed to
him, making Alfred P., William A. and E. C. Hollings-
worth and Sarah J. Darrah, Mary L. Cook, Arizona Mit-
cham, John Carlyle Miller and Ella Riley defendants.

It is alleged by appellant that said land was the sole and
separate property of Alfred P. Hollingsworth and that his
wife, Mary E. Hollingsworth, had no community or other
interest therein. It is alleged and admitted that said Mary
E. died intestate, leaving surviving her as her only heirs at
law Alfred P. Hollingsworth, her husband, and William
Hollingsworth, E. C. Hollingsworth, Sarah J. Darrah, Mary
L. Cook, Arizona Mitcham, John Carlyle Miller and Ella
Riley, her children, all adults at the time of her death;
and that she left no debts, obligations or liabilities of any
kind. William Hollingsworth, E. C. Hollingsworth, Sarah
J. Darrah and Mary L. Cook are children of the marriage
of Alfred P. and Mary E. Hollingsworth; Arizona Mit-
cham, John Carlyle Miller and Ella Riley are children of
Mary E. Hollingsworth by a former marriage.

Alfred P., William and E. C. Hollingsworth and Sarah
J. Darrah and Mary L. Cook, claiming no interest in the
land in controversy, defaulted, but Arizona Mitcham, John
Carlyle Miller and Ella Riley answered, denying the title of
appellant and by cross-complaint alleged that the land was
community property of Alfred P. and Mary E. Hollings-
worth and claimed one-seventh each of the interest of Mary
E. Hollingsworth.

So far as the record shows no one of the Hollingsworths
nor Sarah J. Darrah nor Mary L. Cook was served with
the cross-complaint, nor did any one of them appear in the
cross-action.

Appellant answered the cross-complaint denying the title of cross-plaintiffs and pleading laches on their part and that their claims were barred by certain statutes of limitation enumerated. It is claimed by appellant that the land in controversy is the separate property of Alfred P. Hollingsworth by reason of an agreement made between Alfred P. and Mary E. Hollingsworth at or about the time of their purchase of a section of land in Nebraska in the year 1874. These parties were married in Nebraska in 1868 and at that time Mary E. Hollingsworth was the owner of a homestead entry upon which the parties resided from their marriage up to the year 1874, and at which time they traded the homestead for a section of raw land. The agreement between them, to which reference has been made, was that the children of Mary E. Hollingsworth by her first marriage and the children of Alfred P. Hollingsworth, who had also been previously married, should be provided for by conveying to them one-half of said section of raw land so that the children of the marriage of Alfred P. and Mary E. Hollingsworth might be the sole beneficiaries of such accumulations, if any, as might follow the marriage of these persons. Accordingly, one-half of said section of land was so deeded, the two sons of Alfred P. Hollingsworth and the son of Mary E. Hollingsworth receiving each eighty acres, and the two daughters of Mary E. receiving each forty acres. The deed to the other half of the section by direction of the grantees was made "unto Alfred Hollingsworth, Mary E. Hollingsworth and their heirs by said Mary E. Hollingsworth." Later this half section last mentioned was mortgaged by Alfred P. and Mary E. Hollingsworth and thereafter was sold by them. They then moved to Kansas and after remaining there some years moved to Oregon, and about two years later came to Latah county, Idaho. In Oregon land was purchased by them and also in Latah county a tract of 120 acres was purchased prior to the purchase of the land in controversy. Alfred P. Hollingsworth testifies that in all these purchases prior to that of the land in controversy the deeds were drawn in the

same form as the deed from Oylear and his wife. As he
put it, ''Carried it all the way through. Started it in
1864.'' Undoubtedly he meant 1874, the year in which the
Nebraska half section was acquired. The Oregon land was
sold by them and the Latah county tract was mortgaged and
afterward sold by them.

We find nothing in the record to justify the contention
that this agreement or the deed to the land in controversy
made said land the separate property of Alfred P. Hol-
lingsworth. It is argued in the brief of appellant that at
the time of the execution and delivery of the deed to the
land in controversy title vested in Alfred P. Hollingsworth
and the four children of the latter marriage, all of whom
were then living. If this be true, then Alfred P. Hollings-
worth took only an undivided one-fifth of the land, which
one-fifth was community property, and a like interest was
taken by each of the children. Under this arrangement,
then, if Alfred P. Hollingsworth had died in 1909 and his
wife had survived him she would have taken one-half of the
undivided one-fifth interest that he had in the land. The
manner in which they bought and mortgaged and sold land
during all the years of their married life is entirely in-
consistent with the claim that the children of their mar-
riage took title immediately under this deed. There is
nothing in the deed, when viewed alone, that necessitates
holding that these four children of the marriage of Alfred
P. and Mary E. Hollingsworth took title immediately; and
when we consider the conduct of Alfred P. and Mary E.
Hollingsworth under the agreement made by them it is
conclusively shown that there was no intention upon their
part that title to any of the lands acquired by them should
vest immediately in their heirs. Beginning in 1878, when
they sold the Nebraska land, the various tracts acquired
by them in Nebraska, Oregon and Idaho were mortgaged
and sold without regard to any interest other than their
own. In the case of the tract purchased from Oylear in
December, 1903, about two years after title was acquired
Alfred P. and Mary E. Hollingsworth conveyed one forty

of said land by warranty deed to William A. Hollingsworth in payment or part payment of a loan that he had made to them when said land was purchased. There is nothing in the record suggesting any right in said land held by the children of their marriage until September, 1916, when Sarah J. Darrah quitclaimed to William Hollingsworth as to eighty acres, and May, 1919, when a quitclaim deed was taken by William Hollingsworth from his two sisters and his brother, for the entire Oylear tract.

It is undisputed that all, or nearly all, of the money used in the purchase of this land was borrowed and that the payment for the land was in fact made during the existence of the community by the joint efforts of Alfred P. Hollingsworth and his wife. It was therefore community property. (*Northwestern Bank v. Rauch*, 7 Ida. 152, 61 Pac. 516; *Chaney v. Gauld Co.*, 28 Ida. 76, 152 Pac. 468.)

All property acquired by either spouse during coverture is presumed to be community property and the burden is on him who asserts it to be separate property to show such fact by a preponderance of the evidence. (*Humbird Lumber Co. v. Doran*, 24 Ida. 507, 135 Pac. 66.)

In *Fanning v. Doan*, 128 Mo. 323, 30 S. W. 1032, the supreme court of Missouri uses this language, which we deem very appropriate to this case:

"The main purpose in the construction of deeds, as of other contracts, is to effectuate the intention of the parties, and little aid can be derived from precedents or technical rules. Every deed must be construed for itself, in the light of that general and paramount rule which requires 'that the intention of the parties is to be ascertained by considering all the provisions of the deed as well as the situation of the parties, then give effect to such intention, if practicable, when not contrary to law.'" (2 Devlin on Deeds, sec. 836.)

"The intention of the parties is gathered from the language of the deed, as such language is explained by the attendant circumstances and the relation of the parties, and must control." (*Fletcher et al. v. Tyler et al.*, 92 Ky. 145, 36 Am. St. 584, 17 S. W. 282.)

In this case it is not a question of determining the intention of the grantors, since the grantors were simply carrying out the instructions of the grantees in wording the deed as they did. The intention to be ascertained is that of Alfred P. Hollingsworth and his wife in requiring this deed to be so made, and their intention is unmistakably shown in the construction placed by them upon this deed and the several like deeds preceding this one, all of which ·Alfred P. Hollingsworth claims were drawn in the same manner and for the same purpose. We think there can be no question that the purpose of Alfred P. and Mary E. Hollings-·worth was to take title to this land in themselves and that the sole purpose of this arrangement or agreement between them was to control, if possible, the descent of the property. acquired during their marriage. It is true, as suggested by appellant, that if they had so desired they could have deeded this property to these four children; and it is equally true that Mary E. Hollingsworth, if she had so desired, could have disposed of her interest by will. But they did not choose to deed the property and she did not make a will. It necessarily follows, therefore, that her interest in this community property descended in the manner fixed by the statute in force at the time of her death, R. C., sec. 5713, which distributed it equally among the three children of her first and the four children of her second marriage. The children of Alfred P. and Mary E. Hollingsworth having conveyed their interest to appellant, the court awarded each of the three children of Mary E. Hollingsworth by her first marriage an undivided one-fourteenth of the land in controversy and quieted the title of the remaining eleven-fourteenths in appellant.

It is also claimed by appellant that he has title by adverse possession by himself and his grantors for more than ten years immediately preceding the bringing of the action. At the death of Mary E. Hollingsworth, Alfred P. Hollingsworth and the children of his marriage with Mary E. be-· came tenants in common of this land. (*Ewald v. Hufton,* 31 Ida. 373, 173 Pac. 247.) Alfred P. Hollingsworth had

been in possession from the time of the purchase and he continued in possession up to the time of his sale of the last eighty to his son, William Hollingsworth. There is nothing in the record showing that he at any time or in any manner indicated to the children of his wife's first marriage that he was holding said land adversely to them. In the absence of anything to indicate such an intention his occupancy would be presumed to be that of his cotenants also. The statement of the rule as to tenants in common was laid down by Justice Taft in the case of *Elder v. McClaskey,* 70 Fed. 529, 17 C. C. A. 251, in the following words:

"Before adverse possession by one tenant in common against another can begin, the one in possession must, by acts of the most open and notorious character, clearly show to the world, and to all having occasion to observe the condition and occupancy of the property, that his possession is intended to exclude, and does exclude, the rights of his cotenant. It is not necessary for him to give actual notice of this ouster or disseising of his contenant to him. He must, in the language of the authorities, 'bring it home' to his cotenant. But he may do this by conduct, the implication of which cannot escape the notice of the world about him, or of anyone, though not a resident in the neighborhood, who has an interest in the property, and exercises that degree of attention in respect to what is his that the law presumes in every owner."

The holding of Alfred P. Hollingsworth not being adverse to the children of Mary E. Hollingsworth's first marriage, and the adverse holding of appellant having continued for only four years, the claim of appellant in this regard must fail. Appellant contends that the deed from Oylear was sufficient notice of the adverse holding of Alfred P. Hollingsworth; but the children of Mary E. Hollingsworth by her first marriage took title by virtue of the law and not through this conveyance. (*Ewald v. Hufton, supra.*) So far as the children of the last marriage are concerned, they were never in possession and no

issue is raised in the complaint as to adverse possession by them.

The judgment of the district court is affirmed, with costs to cross-plaintiffs.

Rice, C. J., and McCarthy, J., concur.