(No. 6343.  May 6, 1937.)

GEORGE ZEZI and A. E. ANDERSON, Respondents, v. EXTA LIGHTFOOT, JOHN WILLIAMS, T. J. Mc-DANIEL and A. E. COX, Appellants.

[68 Pac. (2d) 50.]

Edwin Snow and Maurice H. Greene, for Appellants.

Thornton D. Wyman and Z. Reed Millar, for Respondents.

GIVENS, J.—Respondents claim an appropriation of 10 cubic feet per second or 500 inches of the waters of Grimes Creek, in Boise county, for placer mining purposes. Water was diverted and used by them on the "Theron" claims during July and the balance of the mining season in 1933, and until July, 1934. The water was conveyed through the channel of the "Mountain Ditch," an old placer mining ditch, cleaned out and repaired by respondents, and in connection with which they reconstructed a flume in 1933. This ditch extends in a generally southeasterly direction along a

ridge north and somewhat parallel to the course of Grimes Creek.

Appellants claim a water right of 20 cubic feet or 1,000 inches of water from the same stream with a priority of January 12, 1905, with point of diversion approximately a mile and a half above that of respondents', and on the opposite side of the creek, conveyed through what is known as the "Noble Ditch," and originally to the Noble placer claims south of Grimes Creek.

July 9, 1934, appellants, Williams, McDaniel and Cox using what they claimed to be water of the "Noble" appropriation, through the Noble ditch on the Noble placer claims, diverted practically all of the flow of Grimes Creek into the ditch, thus shutting off respondents' supply, who thereupon and immediately thereafter in this action to have the court find and declare respondents' water right and priorities secured an injunction enjoining such interference.

The gist of the action is that the Noble water right, the basis of appellants' claim to the right to use the water and to interfere with respondents' use, was lost by abandonment, because either not used at all for a five year period or used for purposes other than the original purpose for which appropriated, or used in amounts so negligible as to amount to virtual nonuse or application to a beneficial purpose. The court found respondents had a water right as claimed by them, and:

"V.

"That all allegations of the Defendants' Answer, alleging ownership of any right, title or interest in or to the use of the waters of Grimes Creek through the Noble ditch are false and incorrect, and without any foundation in fact, and that the further allegations of defendants' affirmative defense alleged in Paragraph I, II, III, and VI, and those allegations in Paragraph V, referring to said claim of the use of the waters of Grimes Creek through said Noble Ditch claimed by Defendants are not true.

"VI.

"That the said Defendants, Lightfoot, Williams, McDaniel and Cox have no right, title or interest in and to said waters of Grimes Creek prior to said plaintiffs' right as aforesaid

and as against said defendants, the plaintiffs' right is prior and superior.

## "VII.

"That the said plaintiffs are the owner, and entitled to the beneficial use of ten (10) cubic feet per second of the waters of Grimes Creek as aforesaid, with a priority as of July 24, 1933, and that said defendants or either of them, have no right, title or interest in and to the use and possession of the same, prior to said plaintiffs."

The court also awarded respondents damages for their losses due to the discontinuance of their placer recoveries in 1934 because of appellants shutting off the water supply as above noted, and made the temporary injunction against appellants permanent.

Respondents contend that appellants had no right to change the place of application, or the kind of use of the Noble water from 1905 to 1932, i. e., from placering to prospecting, milling and fire protection, and that in so doing their original appropriation became lost. No change of place of application if for a beneficial use of the Noble water would inure to aid respondents prior to the time they made their appropriation in 1933, because not being appropriators during that time it was no concern of theirs excepting as it bears on the question of abandonment, where or how the water was diverted or where applied. (*In re Department of Reclamation*, 50 Ida. 573, 300 Pac. 492.) Furthermore, article 15, section 3 of the State Constitution[1] declares as one generic

---

[1]"The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied, except that the state may regulate and limit the use thereof for power purposes. Priority of appropriation shall give the better right as between those using the water; but when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall (subject to such limitations as may be prescribed by law) have the preference over those claiming for any other purpose; and those using the water for agricultural purposes shall have preference over those using the same for manufacturing purposes. And in any organized mining district those using the water for mining purposes or milling purposes connected with mining, shall have preference over those using the same for manufacturing or agricultural pur-

division, the use of water for mining, or milling purposes connected with mining, and the debates in the Constitutional Convention, volume 2, pages 1127–1129, 1157, 1166–1176, and 1351, emphasize and make clear that the change from one kind of mining, or use in mining to another, or from one place to another in such connection, does not invalidate an appropriation for mining purposes as contended for by respondents and all of the application, of the Noble waters at whatever times and in whatever quantities used, was for mining ''purposes.'' (Kinney, Irrigation & Water Rights, 2d ed., vol. 2, p. 1198, sec. 694; p. 1526, sec. 867.)

It is virtually conceded and there is little or no conflict in the evidence that respondents did appropriate and apply to a beneficial use in mining, the waters of Grimes Creek during the mining seasons in 1933 and 1934 until the supply was stopped by appellants, and prior to the date of the interference. They filed an application with the State Reclamation Department for a permit, approved June 6, 1934, by the Commissioner. The evidence shows that the maximum capacity of the flume through which respondents took their water in 1933 was 270 inches. This flume was about one and a half miles below the point of diversion and there was insufficient evidence of what loss by seepage there was between the point of diversion and the flume to entitle respondents to a right with a priority of 1933 to more than the 270 inches. In 1934 they put in two pipes in addition to the flume resulting in a total carrying capacity of the full 500 inches claimed by them, and thus are therefore entitled to 230 inches (the amount between 500 inches and the amount awarded above for 1933) with a priority of June 6, 1934.

The pertinent part of section 41–216, I. C. A., is as follows:

''All rights to the use of water acquired under this chapter or otherwise shall be lost and abandoned by a failure for the term of five years to apply it to the beneficial use for which it was appropriated, and when any right to the use of water shall be lost through nonuse or abandonment such rights to

poses. But the usage by such subsequent appropriators shall be subject to such provisions of law regulating the taking of private property for public and private use, as referred to in section 14 of article I of this Constitution.''

such water shall revert to the state and be again subject to appropriation under this chapter; . . . . ''

It will be noticed that it is the nonuse for five years which works an abandonment. Abandonments and forfeitures are not favored. (*Hurst v. Idaho-Iowa L. & R. Co.*, 42 Ida. 436, 246 Pac. 23.) And even though forfeited and abandoned for five-year periods prior to the time respondents initiated their appropriation, if subsequent to such five-year periods, and *prior to respondents' appropriation*, appellants or their predecessors in interest under claim of right and continuity of interest of diversion and application of the Noble water, as such, for mining purposes to the amount applied, rediverted and applied water, there would be no abandonment which could inure to the benefit of respondents. (*Union Grain etc. Co. v. McCammon D. Co.*, 41 Ida. 216, 240 Pac. 443; *Ramshorn Ditch Co. v. United States*, 269 Fed. 80 at 84 [4].) The crucial year therefore, both as to time and amount, is 1932, because it is conceded that none of the Noble water was used, as such, by appellants or their predecessors in interest in 1933, and the evidence as to continuous use of applicable quantities of Noble water, as such, from 1905 to 1930 is evanescent. The decisive five-year period therefore would be the five years preceding 1933. Appellant sought to meet this challenge by a showing that the Noble water was used by one Whittle and his associates under an agreement with either Lightfoot, the owner or representative of the owners of the Noble water right and placer claims at that time, and/or the Mineral Mining Co., lessee of Lightfoot and his organization. There was some dispute, confusion and contradiction as to just who gave Whittle et al. permission and authority to use the Noble water right, and how they received such permission and authority, but that they did receive and had such right from one or all of the parties who claimed at that time to own or had the use of the Noble water, as such, there is no ultimate dispute.

The confusion arises from two sources. First, as to whether Lightfoot or the Mineral Mining Co. of which Mr. Gallupe was the managing head, had the right to give or gave Whittle et al. permission to use the Noble water. Since however, both Lightfoot and Gallupe said they did give this right,

as against respondents, who at that time were not claiming any waters from the stream, if Whittle and Co. used Noble water, as such, such permissive use was sufficient to inure to the benefit of the true owners thereof, or persons entitled to its use and prevent the operation of an abandonment. Further dispute as to whether Noble water was used, as such, arises from written permission given Whittle and Co.; by the Missouri Mining Co. to use all, 500 inches, of the so-called Howard water right, prior in point of time to, and with point of diversion above, both the rights of appellants and respondents.

Respondents contend that Whittle and Co. used only the Howard water and used none of the Noble water, and that in any event it was not used on the Noble property. As to the latter point, if not used on the Noble claims, it could not injuriously have affected respondents, since there could be no return flow to the stream if used strictly and exclusively on the Noble placer claims, at a point where respondents could have picked the water up and used it through the "Mountain Ditch" on the "Theron" claims. (*Mahoney v. Neiswanger*, 6 Ida. 750, 59 Pac. 561; *Hard v. Boise City Irr. & Land Co.*, 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407; *Joyce v. Murphy Land etc. Co.*, 35 Ida. 549, 208 Pac. 241; *First Security Bank v. State*, 49 Ida. 740, 291 Pac. 1064; *In re Rice*, 50 Ida. 660, 299 Pac. 664; *Harris v. Chapman*, 51 Ida. 283, 5 Pac. (2d) 733.)

Respondents' suit to quiet title as against appellants on the theory that there had been an abandonment of the Noble water right placed the burden of proof upon respondents to show that the 700 or 800 inches used by Whittle and Co. in 1932 consisted of the full Howard right for 500 inches, in other words, if the 700 or 800 inches was in fact Noble water, there was no abandonment.

The uncontradicted evidence shows that Whittle and Co. used between 700 and 800 inches and there is not sufficient evidence showing this was not Noble water to sustain the burden cast upon respondents. Whittle and Co. had the right to use both Noble and Howard water. Appellants ask no affirmative relief merely resisting respondents' contention that the Noble water right had been abandoned and the court

should have found that appellants even though they had abandoned all in excess of 700 inches of their original claimed appropriation of 1,000 inches, still retained by Whittle and Co.'s use in 1932 of Noble water, a valid right for 700 inches, as such, which would prevent the barring application of the abandonment statute. (*Hutchinson v. Watson Slough Ditch Co.*, 16 Ida. 484, 101 Pac. 1059, 133 Am. St. 125; *Farmers etc. Co. v. Riverside Irr. Dist.*, 16 Ida. 525, 102 Pac. 481; *Washington State Sugar Co. v. Goodrich*, 27 Ida. 26, 147 Pac. 1073; *Albrethsen v. Wood River Land Co.*, 40 Ida. 49, 231 Pac. 418; *Union Grain etc. Co. v. McCammon D. Co.*, *supra.*)

The judgment is therefore reversed and remanded with instructions to the trial court to decree accordingly, the permanent injunction to be modified in conformity with this conclusion, and no damages being awarded to respondents. Each party to pay one-half the costs on appeal.

Morgan, C. J., Holden and Budge, JJ., and Sutton, D. J., concur.