406 P.2d 106

Grace HAWE, Administratrix of the Estate of Arleigh H. Hawe, deceased, Grace Hawe, Raleigh Hawe, Julie Hawe Day, formerly known as Julie Hawe Lashbrook, heirs-at-law of Arleigh H. Hawe, deceased, Plaintiffs-Respondents,

v.

Agnes M. HAWE and George R. Elliott, Administrator of the Estate of Edward Hawe, deceased, Defendants-Appellants.

No. 9379.

Supreme Court of Idaho.

Aug. 3, 1965.

Rehearing Denied Oct. 12, 1965.

William D. Keeton and Givens, Doane, Givens & Manweiler, Boise, for defendants-appellants.

Langroise, Clark & Sullivan, Boise, for plaintiffs-respondents.

McQUADE, Chief Justice.

Respondents brought this action to determine their interest in and to certain real property. Respondents contend that they are owners in fee simple of an undivided one-half interest thereto. By counterclaim appellants seek to quiet title in themselves to the entire property.

At the time of trial of this action, the principal participants in the transactions in question, Arleigh H. Hawe and Edward Hawe, were deceased. However, chain of record title to the property is established through documentary evidence.

Title to the property was in Edward Hawe and his wife, Agnes Hawe, prior to 1931. Edward had become indebted to the Federal Land Bank of Spokane. On April 1, 1938, the Federal Land Bank agreed to and did accept the sum of $12,500 in full satisfaction of its claim, $2,000 to be paid at that time and the balance of $10,500 evidenced by a note executed by Edward Hawe and Arleigh Hawe and their respective wives. The note was secured by a mortgage on the property. As part of the same transaction the Federal Land Bank and Edward Hawe and his wife executed deeds conveying title to the property to Arleigh Hawe. On May 31, 1938, the initial payment of $2,000 was made and on June 1 the mortgage and deeds were recorded. While the payment of $2,000 was made by the personal check of Arleigh Hawe, $800 of that sum was from Edward Hawe.

From 1938 through 1942 payments on the mortgage-note to the Federal Land Bank amounted to $7,381.70, being payments in the nature of: $1,971.22 by personal check drawn by Arleigh Hawe, $409.50 by check drawn by Arleigh Hawe on the account of Hawe & Hawe, $.98 by check drawn by Edward Hawe and Arleigh Hawe, and $3,000.00 by check drawn by Edward Hawe on the account of Hawe & Hawe. The last two checks were dated December 29, 1942. From that date all remaining payments were made by Edward Hawe on the account of Hawe & Hawe, with a total of $7,607.47 being paid in addition. Upon the note being fully paid, a release was executed by the Federal Land Bank in April 1947. On June 1, 1942, Arleigh Hawe and wife, by warranty deed, conveyed an undivided one-half interest in the property to Edward Hawe. The deed was recorded January 4, 1943. During the years commencing 1943 and ending 1947, Edward and Arleigh divided the net income after deducting expenses of operation and taxes paid. After 1947 Edward Hawe reported the entire income for tax purposes.

Arleigh Hawe's wife died in 1947. In 1955 Arleigh married Grace Hawe, a party hereto and administratrix of the estate of Arleigh Hawe. Arleigh died in May 1960. Edward Hawe is the uncle of Arleigh Hawe.

Before the matter came to trial, Edward Hawe passed away, and the administrator of his estate was made a party in his stead.

Testimony was adduced by the appellants in support of their contention that Arleigh had agreed to pay the mortgage indebtedness for a one-half interest in the property and that in 1946 Arleigh decided that he had invested enough money in the land and would make no further payment on the mortgage and was abandoning his interest in the property.

For 25 years Arleigh had his horses on the premises. These horses remained until Edward asked Arleigh in 1948 or 1949 to take the horses away because they were a nuisance.

The record shows that Edward was in actual possession of the property from the time of purchase in 1910 until his death. Arleigh never lived upon the land or asserted a desire to do so. Arleigh and his son hunted on the land through November 1959. For a five-year period from 1955 through 1960, Kenneth McKenney farmed the land under the direction of Edward and was unaware of an interest in the land asserted by Arleigh Hawe.

The trial court rendered an interlocutory judgment for the respondents but reserved the issues of partition and accounting pending this appeal.

Appellants specify 18 assignments of error. These assignments relate to the trial court's findings of fact and conclusions of law insofar as they pertain to the evidence. The principles of law involved are resulting or constructive trust, adverse possession, express or implied condition subsequent, and finally, whether the original deed was in effect a mortgage or an instrument of conveyance and unity of possession.

While there are conflicting facts, the rule relating to a trial court's findings of fact is set out clearly in the case of Conley v. Amalgamated Sugar Co., 74 Idaho 416, 424, 263 P.2d 705, 709 (1953):

> "After the court has found, the criteria are not what other or different findings the evidence could or would sustain, not what findings are plausible, not the weight or quality of the evidence or credibility of witnesses, but the sole criterion is simply whether there is substantial evidence, regardless of conflict, to sustain the findings as made, with all reasonable inferences and intendments in favor thereof. This proposition is so universal, so oft repeated and adhered to as to need no citation of authority in support thereof. It is not what evidence tends to support appellant, or negative that favorable to respondents, but it is what evidence tends to support respondents, with all

reasonable inferences and intendments to be drawn in favor of respondents, which controls the determination of the controversy in this Court."

See also Jensen v. Chandler, 77 Idaho 303, 291 P.2d 1116 (1955).

On the special question of inferences which may be drawn by the trial court and again by this court on appeal, Cazier v. Economy Cash Stores, 71 Idaho 178, 228 P.2d 436 (1951), held:

"All reasonable inferences drawn by the trial court where it is a trier of the facts, from the evidence adduced, will be sustained on appeal. Smith v. University of Idaho, 67 Idaho 22, 170 P.2d 404. On appeal this court is entitled to draw the necessary inferences from the trial court's express findings in order to support the judgment."

See also Angleton v. Angleton, 84 Idaho 184, 370 P.2d 788 (1962).

Appellants assign as error the conclusion of law that Arleigh Hawe was vested in fee simple with an undivided one-half interest in the land by virtue of the deeds dated April 1, 1938. The transactions of 1938 were all complete upon their face. The 1942 deed by Arleigh, conveying a one-half interest to Edward, and which was accepted by Edward, is as follows:

"The purpose of this conveyance is to place the legal title, as well as the equitable title which he now holds, to a one half interest and ownership in and to the lands herein described, in the party of the second part, and to make each of the parties hereto an equal owner and title holder of said lands."

This provision conveyed fee simple title to one-half of the property to merge with the equitable title to one-half then held by Edward. The trial court in its findings of fact so interpreted the conveyance.

Appellants contend the trial court erred in not finding that the 1938 deed was to secure a loan or indebtedness or as part of a security transaction.

■ It is presumed that the holder of the title to property is the owner thereof. Shurrum v. Watts, 80 Idaho 44, 324 P.2d 380 (1958). The trial court found the consideration for the conveyance in 1938 to be the agreement or promise to pay the obligation owing to the Federal Land Bank.

■ However, for a deed absolute on its face to be treated as a mortgage, this court has applied the following test:

"(a) *Existence of debt to be secured.* The controlling test to be applied in determining whether a given instrument is a mortgage is whether at the time of the execution of the deed the grantor sustains the relation of debtor to the grantee. * * *

"(b) *Satisfaction or survival of the debt.* On an issue as to whether a deed absolute in form was intended as an absolute conveyance or as a mortgage, the test is whether there was a subsisting debt after the conveyance." Dickens v. Heston, 53 Idaho 91, 21 P.2d 905, 90 A.L.R. 944 (1933).

See also Clontz v. Fortner, Idaho, 399 P.2d 949 (1965); Investors' Mtg. Secur. Co. v. Hamilton, 51 Idaho 113, 4 P.2d 347 (1931); Wright v. Rosebaugh, 46 Idaho 526, 269 P. 98 (1928); Clinton v. Utah Construction Co., 40 Idaho 659, 237 P. 427 (1925).

■ "A mortgage is an incident of the debt, and without a debt, obligation, or liability there is nothing to secure, consequently there can be no mortgage." Shaner v. Rathdrum State Bank, 29 Idaho 576, 161 P. 90 (1916).

The trial court found that no debt existed between Edward and Arleigh Hawe, that a loan was not intended, and thus no obligation to repay existed.

The trial court further found that a condition subsequent was not incorporated into the deed, nor could any appropriate language be found therein to imply that such a condition existed. The trial court relied upon the following quotation from Restatement of Property:

"The term 'condition subsequent' denotes that part of the language of a conveyance, by virtue of which upon the occurrence of a stated event the conveyor, or his successor in interest, has the power to terminate the interest which has been created subject to the condition subsequent, but which will continue until this power is exercised" Restatement of Property, § 24.

In Gange v. Hayes, 193 Or. 51, 237 P.2d 196 (1951), it was said:

" 'Conditions subsequent are not favored in law, and are to be strictly construed, because they tend to destroy estates, and generally all doubts are resolved against restrictions on the use of property by the grantee and devisee'; and a deed will not be construed to create an estate on condition or limitation unless the language imports a condition or limitation, or unless the intent to create a conditional limitation is clearly indicated. 4 Thompson, Real Property, 571, 708, §§ 2044, 2170."

See also Savanna School District of Orange County v. McLeod, 137 Cal.App.2d 491, 290 P.2d 593 (1955); Grove v. Payne, 47 Wash.2d 461, 288 P.2d 242 (1955).

The trial court held that there existed neither express nor implied intention that a condition subsequent be attached to the transaction by the parties to the 1938 deed.

Appellants contend the record clearly implies the existence of a condition and that the court at one time recognized it. Ap-

pellant quotes from the memorandum decision in support thereof:

"The evidence would indicate that the conveyance to Arleigh in 1938 was in consideration of an agreement or promise on his part to pay the Federal Land Bank obligation."

Appellants contend this is contrary to the ultimate finding of the trial court, "that the conveyance was not subject to a condition subsequent."

The trial court made a finding of fact as to the conflicting evidence and the inferences arising therefrom. Such finding is supported by the record and will not be disturbed.

Appellants next argue that the transaction imposes a constructive or resulting trust by operation of law upon Arleigh and his heirs. The trial court, in considering this issue, quoted in part from Restatement of Restitution, § 160, Comment b.:

"A resulting trust arises where a transfer of property is made under circumstances which raise an inference that the person making the transfer or causing it to be made did not intend the transferee to have the beneficial interest in the property transferred. A constructive trust is imposed not because of the intention of the parties but because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property."

It has been said of resulting trusts that: "It never arises out of contract or agreement that is legally enforceable, 'but arises by implication of law from their acts and conduct apart from any contract, the law implying a trust where the acts of the party to be charged as trustee have been such as are in honesty and fair dealing consistent only with a purpose to hold the property in trust, notwithstanding such party may never have agreed to the trust and may have really intended to resist it.'" Shepherd v. Dougan, 58 Idaho 543, 553, 76 P.2d 442, 445 (1937).

See also Mouser v. O'Sullivan, 22 Wash.2d 543, 156 P.2d 655 (1945).

"As a general rule, a resulting trust arises only where such may reasonably be presumed to be the intention of the parties as determined from the facts and circumstances existing *at the time of the transaction*." (Emphasis supplied) Shurrum v. Watts, supra, at p. 53, 324 P.2d at p. 385.

See also Shipe v. Hillman, 206 Or. 556, 292 P.2d 123 (1955).

Another discussion of resulting trusts is found in 89 C.J.S. Trusts § 98 at 940, wherein it is stated:

"Resulting trusts, it has been said, are of two general types: Those where a purchase has been made and the legal estate is conveyed or transferred to one person, but the purchase price is paid by another person; and those where there is a gift by deed or will to a donee or grantee without pecuniary consideration coming from the grantee, but the intention appears from the instrument itself, that the legal and beneficial estates are to be separated and that the grantee or donee is either to enjoy no beneficial interest or only part of it."

"As a general rule, where a conveyance of property is made without a valuable consideration therefor, express or implied, and is not intended as a gift, a resulting trust arises in favor of the grantor. While the absence of a consideration is essential, the mere want of consideration does not of itself operate to create a resulting trust for the benefit of a grantor in a deed against his grantee or those claiming under him as privies to such deed; but there must be in addition circumstances evidencing that the grantee was not intended to take beneficially. The general statement has been made that a voluntary conveyance cannot be held to create a resulting trust in favor of the grantor, and it has been held that a want or failure of consideration for a conveyance does not raise a resulting trust." § 105 at 954.

"Although in some jurisdictions a failure of consideration may raise a resulting trust even though the deed recites a consideration, the general rule is that in the absence of fraud or mistake, a resulting trust will not arise in favor of the grantor although a valuable consideration is not in fact paid, where a declaration to the contrary is made by the grantor at the time of the conveyance, as where the conveyance recites a valuable consideration as paid by the grantee, even though it be only nominal, particularly where the conveyance is absolute in form and the habendum clause declares the beneficial use or interest in the property to be in the grantee or some third person. Such a recital in a deed cannot be contradicted by parol evidence by the parties to the deed, or by those holding under them; and except in cases of fraud or mistake parol evidence is not admissible in such a case to show that no consideration was given for the deed, or that it was voluntary, so as to establish a resulting trust in favor of the grantor, or those claiming under

him. When a conveyance purports to have been made for a good and valuable consideration paid by the grantee, the presumption of law is that the estate is held by him for his own use." § 105 at p. 956.

Application herein of the rules enunciated by the foregoing authorities shows that a resulting trust did not arise because of the transaction of the parties. The trial court found that no agreement could be implied at the time of the conveyance, that being the time for the creation of a resulting trust, nor have appellants proven that the parties intended title to the property would be held for the benefit of appellants.

There is ample evidence upon which to base the trial court's findings of fact and conclusions of law. The conveyance was absolute in nature, being neither conditional, qualified, nor limited. Appellants urge that Arleigh failed to pay his proportionate share due on the note to the Federal Land Bank of Spokane. Failure to pay the full share of the obligation is such as to hold Arleigh for a breach of an implied covenant to perform his obligation under the contract, which would give rise to an action in favor of Edward.

The conveyance being complete on its face and the conveyance being unconditional, yet each holding a one-half interest,

the parties were tenants in common, as found by the trial court.

Appellants contend that a tenancy in common requires unity of possession. Possession is a right of possession and need not be possession in fact. That Edward lived upon the land at all times and Arleigh did not is insufficient in and of itself to negative tenancy in common.

Appellants contend that although the conveyances of 1938 and 1942 are unconditional, unqualified and unlimited, the subsequent acts of respondents and appellants should still allow appellants to prevail.

Appellants contend and the court found that Arleigh and his wife at no time lived upon the land in question but that Edward and his wife lived upon the land at all times from the purchase of the land in 1910 until Edward's death. Much stress is placed by appellants upon the request by Edward that Arleigh remove the horses from the farm. There is no evidence which illuminates the circumstances surrounding removal of the animals.

The evidence clearly indicates that with the exception of visits upon the land and occasional hunting upon the premises, Arleigh did not exercise or attempt to exercise control over the premises after 1947.

Appellants also seek to quiet the title by adverse possession as against the cotenant Arleigh.

This court stated the requirements of adverse possession between cotenants in the cases of Flora v. Gusman, 76 Idaho 188, 279 P.2d 1067 (1955); Terry v. Terry, 70 Idaho 161, 213 P.2d 906 (1950); and Vaughan v. Hollingsworth, 35 Idaho 722, 208 P. 838 (1922). In Vaughan v. Hollingsworth, supra, it was quoted:

"Before adverse possession by one tenant in common against another can begin, the one in possession must, by acts of the most open and notorious character, clearly show to the world, and to all having occasion to observe the condition and occupancy of the property, that his possession is intended to exclude, and does exclude, the rights of his cotenant. It is not necessary for him to give actual notice of this ouster or disseising of his contenant, to him. He must, in the language of the authorities, 'bring it home' to his cotenant. But he may do this by conduct, the implication of which cannot escape the notice of the world about him, or of anyone, though not a resident in the neighborhood, who has an interest in the property, and exercises that degree of attention in respect to what is his that the law presumes in every cwner." At page 731, 208 P. at page 841.

"In short, there are but three elements to be established: (1) the intent; (2) the adverse possession in fact; and (3) the knowledge or notice." 82 A.L.R.2d 5, § 2.

Did the adverse possessee have knowledge or notice of the intention of the possessor or knowledge or notice of the adverse nature of the possession? The trial court found that notice was lacking. The only evidence upon the record to indicate the elements of the adverse possession were the continuous possession, the payment of all taxes after 1948, and the request to remove the horses from the premises.

In the case of Dimmick v. Dimmick, 58 Cal.2d 417, 24 Cal.Rptr. 856, 374 P.2d 824 (1962), a suit arose to quiet title to farm property. The possessors of the land, or alleged possessors, were joint tenants. In 1937 defendant told plaintiff that:

" * * * he was not going to put any more money or effort into the venture; and that if plaintiff wished to carry on, he could do so with defendant's full permission, but he (defendant) was finished with it. Plaintiff understood that there was a total abandonment of the property by defendant and told him that it was 'O.K.,' he was out, and that he himself would carry on alone." 24 Cal.Rptr. at p. 857, 374 P.2d at p. 825.

In that case the plaintiff financed all operations on the ranch and paid all taxes. In addition, plaintiff made improvements upon

the land of more than $10,000. Evidently the defendant did nothing in connection with the land, with the exception of keeping some empty beehives on part of the land without objection by plaintiff. Then in 1959 a buyer offered $80,000 for the farm and defendant asked for half. In a claim for adverse possession, defendant prevailed, there being no ouster of defendant's interest.

This case parallels the case at hand, with the exception that in the Dimmick case there was found to be no intent to exclude the interest of the defendant, while in the present case there exists the allegation that the removal of the horses constituted sufficient grounds to put Arleigh on notice of the adverse interest asserted by Edward.

 In light of the presumption that a cotenant holds for the benefit of all cotenants and not adversely, Chapin v. Stewart, 71 Idaho 306, 230 P.2d 998 (1951), appellants must show by clear and convincing evidence that the elements of the adverse possession were all present. The findings of the trial court are otherwise. And the weight of the evidence is not such as to cause us to change.

A matter which was not dealt with directly in the briefs or either counsel, but was not excluded completely in the preparation on appeal, is abandonment. Appellants and respondents approach the problem of possession or the right of possession to establish a tenancy in common.

 At or about 1947 appellants urge that Arleigh expressed his intention to abandon his interest in the property. The Idaho cases on abandonment indicate that a possessor of real property can exercise his right to quit by a declaration of clear intention to quit and a relinquishment of the rights of possession. Most of these cases have arisen over mining interests or water rights. Wagoner v. Jeffery, 66 Idaho 455, 162 P.2d 400 (1945); Carrington v. Crandall, 65 Idaho 525, 147 P.2d 1009 (1944); Perry v. Reynolds, 63 Idaho 457, 122 P.2d 508 (1942); Zezi v. Lightfoot, 57 Idaho 707, 68 P.2d 50 (1937); Union Grain Etc. Co. v. McCammon D. Co., 41 Idaho 216, 240 P. 443 (1925); Joyce v. Murphy Land Etc. Co., 35 Idaho 549, 208 P. 241 (1922); Welch v. Garrett, 5 Idaho 639, 51 P. 405 (1897). But an interest in real property may be abandoned. O'Brien v. Best, 68 Idaho 348, 194 P.2d 608 (1948).

There are cases which hold that real property cannot be abandoned but becomes subject to adverse possession. In East Tennessee Iron & Coal Co. v. Wiggin, 68 F. 446, 449 (1895), the court said:

"Precisely what is meant by 'an abandoned' legal title is hard to define. If it

is the valid legal title, it is inconceivable how it can be abandoned. * * * Plaintiffs did not abandon their title by neglecting for 40 years to take possession or bring action. If there has not been a devolution of title by operation of an adverse possession, their title is perfect, and their right of recovery would not be affected by a theoretical abandonment predicated alone upon a neglect of their estate."

To the same effect are: Faulks v. Schrider, 69 App.D.C. 137, 99 F.2d 370 (1938); Kimberlin v. Hicks, 150 Kan. 449, 94 P.2d 335 (1939); Keeler v. McNeir, 184 Okl. 244, 86 P.2d 1004 (1939); Cottrell v. Daniel, 30 Tenn.App. 339, 205 S.W.2d 973 (1947).

█ The trial court was correct in concluding that abandonment was not established. We also agree with the trial court that adverse possession did not attain against Arleigh as a cotenant.

All remaining factual assignments are resolved in favor of respondents. The judgment is *affirmed*.

Costs to respondents.

McFADDEN, TAYLOR, SMITH and KNUDSON, JJ., concur.