[S. F. No. 20849. In Bank. Sept. 27, 1962.]

OSCAR DIMMICK et al., Plaintiffs and Appellants, v. CLARENCE DIMMICK et al., Defendants and Respondents.

418

Walch, Griswold, Braden & Dittmar, Herbert M. Braden and Roger R. Walch for Plaintiffs and Appellants.

Brown & Tibbs and Stanley H. Tibbs for Defendants and Respondents.

McCOMB, J.—After trial before the court without a jury, in an action to quiet title to a parcel of land, the trial court found that plaintiff Oscar Dimmick (hereinafter referred to as "plaintiff") and defendant Clarence Dimmick (hereinafter referred to as "defendant") were joint tenants of the property and quieted title in plaintiff to an undivided one-half interest therein. Plaintiff appeals.

Plaintiff and his wife sued defendant and his wife to quiet title to farm property in Kings County. In his answer defendant set up a claim that he was the owner of an undivided one-half interest in the land and prayed that his title be quieted. The trial court found that plaintiff and defendant owned the property as joint tenants and quieted the title of plaintiff to an undivided one-half interest. No requirement was made for any contribution by defendant for advances made by plaintiff for the benefit of the co-owners during the preceding 22 years.

*Questions*: First. *Was there substantial evidence to sustain the findings of fact of the trial court?*

*Yes.* On January 13, 1934, Sylvester C. Dimmick and Lizzie E. Dimmick deeded the land to their three sons, plaintiff, defendant, and Jonathan M. Dimmick, as joint tenants. On May 18, 1934, Jonathan M. Dimmick, in turn, executed a joint tenancy deed to plaintiff and defendant.

For several years plaintiff and defendant carried on farming operations on the land and maintained a joint bank account. They bought a house for their parents in Hanford, taking the deed in defendant's name. On June 16, 1937, plaintiff's check on the joint account for the purchase of a tractor was returned by the bank with the notation that the account had been closed. Plaintiff went to see defendant, and defendant admitted that he had withdrawn the entire balance in order to make a payment on the house which the two of them had bought for their parents.

According to plaintiff, defendant then stated that he would not have anything more to do with the ranch; that he was not going to put any more money or effort into the venture; and that if plaintiff wished to carry on, he could do so with

defendant's full permission, but he (defendant) was finished with it. Plaintiff understood that there was a total abandonment of the property by defendant and told him that it was "O.K.," he was out, and that he himself would carry on alone.

Defendant testified, however, that he never intended to give up his title to the land but only wished to afford plaintiff the opportunity to farm the property and retain the profits, on condition that he would pay the expenses of operation.

From that time plaintiff farmed the property and cared for it at his sole expense. He paid off the encumbrance, financed the annual growing of crops, and improved the land by fencing it, painting the house, and adding a room, cupboards, and other fixtures. He also drilled three irrigation wells, besides domestic wells, installed two electric motors, a turbine pump, and a centrifugal pump, and added pipelines, a tank tower, a 2,500-gallon tank, a pressure system, and a new electric hot water tank. He built a 24 by 48-foot shop and garage, scraped the land, and put in cement headgates. The cost to plaintiff of the improvements was more than $10,000, part of which was paid from money he earned elsewhere than on the ranch.

During the time he occupied the land, plaintiff signed an oil lease. Defendant also executed it later, but all the money derived from the lease was retained by plaintiff.

After 1937 defendant never contributed anything toward the trust deed payments, improvements, taxes, or operations of the ranch, and he never demanded an accounting of any kind. However, defendant did keep some of his empty beehives on part of the land without objection by plaintiff. Defendant never appeared to do anything else to indicate that he claimed any interest in the ranch until May 1959, when one Russell Barlow offered to buy the property, together with all the farm equipment accumulated by plaintiff, for the sum of $80,000.

The proposed sale was considerably delayed, and it finally failed because defendant wanted half the gross price without deduction for the expenses of the sale or for the value of the personal property which had been accumulated wholly by plaintiff.

The findings of the court include the following: That on the date of the filing of the action, June 9, 1959, the real property stood of record in the names of plaintiff and defendant as joint tenants, and they were on said date the owners

of said real property as joint tenants; that plaintiff had been "in exclusive possession of most of said real property since 1937, and that said possession has been with the express consent of [defendant]"; that during the period from 1937 to the date of the filing of the action defendant had "used a part of said real property for the purpose of storing thereon certain personal property belonging to him, and said use has been under a claim of right so to do"; that since 1937 plaintiff had farmed and managed said real property, expended certain sums of money for improvements, and retained all income and proceeds from his operation and use of said real property; that "during said period . . . [defendant] has not asked for or received from [plaintiff], and [plaintiff] has not offered or provided to [defendant], a report or accounting of or for the income, expenses, receipts or proceeds of the farming operations carried on by [plaintiff] on said real property"; that during said period plaintiff had paid all taxes levied or assessed against the real property, and during said time said property was assessed to plaintiff and defendant "on the records of the assessor of the County of Kings in which county said real property is located"; that plaintiff had "never done or performed any acts or things to exclude [defendant] from said real property, and until a date subsequent to May 16, 1959, the said [plaintiff] has never done or performed any acts or things sufficient to indicate or give notice to [defendant] of any claim on the part of [plaintiff] to own the entire interest in said real property or intent to exclude [defendant] from the ownership of the latter's interest therein"; and that "at all times since January 13, 1934, and continuing until the day on which this action was filed, [plaintiff] acted with respect to said real property in a manner consistent with the continued ownership of an undivided interest therein by [defendant]."

In an action to quiet title based on adverse possession the burden is upon the claimant to prove every necessary element: (1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner. (2) It must be hostile to the owner's title. (3) The holder must claim the property as his own, under either color of title or claim of right. (4) Possession must be continuous and uninterrupted for five years. (5) The holder must pay all the taxes levied and assessed upon the property during the period. (*Laubisch* v. *Roberdo*, 43 Cal.2d 702, 706 [1] [277

P.2d 9] ; *West* v. *Evans,* 29 Cal.2d 414, 417 [1] [175 P.2d 219].)

As plaintiff and defendant were cotenants holding the land in joint ownership, the principle stated in *Johns* v. *Scobie,* 12 Cal.2d 618, 623 [5] [86 P.2d 820, 121 A.L.R. 1404], is applicable: "It is a fundamental rule that each tenant in common has a right to occupy the whole of the property. The possession of one is deemed the possession of all; each may assume that another in exclusive possession is possessing for all and not adversely to the others; and consequently one tenant in common does not, merely by exclusive possession, gain title by adverse possession against the others. Such possession will be presumed to be by permission and rightful, unless notice is brought home to the others that it has become hostile."

*West* v. *Evans, supra,* 29 Cal.2d 414, 418 [5], states the rule thus: "The exclusive occupancy by a cotenant is deemed permissive; it does not become adverse until the tenant out of possession has had either actual or constructive notice that the possession of the cotenant is hostile to him."

In the circumstances developed by the record, the burden was upon plaintiff to prove an ouster. The trial court found that no such proof was made, and viewed the facts as favorable to defendant on the issue of joint ownership of the land. There is ample evidence in the record to support the finding.

Second. *Did the trial court err in not requiring defendant to make a contribution for his just share of the moneys advanced by plaintiff for payment of the taxes, encumbrances and improvements?*

*No.* The record discloses that no request for such relief was made before the trial court and that counsel stipulated at the commencement of the trial that the only issue in the case was whether or not plaintiff had acquired by adverse possession title to defendant's interest in the property.

It is settled that points not raised in the trial court will not be considered on appeal. (*Apra* v. *Aureguy,* 55 Cal. 2d 827, 831 [5] [13 Cal.Rptr. 177, 361 P.2d 897]; *Everly Enterprises, Inc.* v. *Altman,* 54 Cal.2d 761, 765 [4] [8 Cal. Rptr. 455, 356 P.2d 199]; *Damiani* v. *Albert,* 48 Cal.2d 15, 18 [306 P.2d 780].) This rule precludes a party from asserting on appeal claims to relief not asserted in the trial court. (*Miller* v. *Bay Cities Water Co.,* 157 Cal. 256, 284 et seq.

[107 P. 115, 2 L.R.A. N.S. 772]; *Dunn* v. *Dunn*, 180 Cal.App. 2d 839, 842 [3] [4 Cal.Rptr. 748].)

 In the present case the claim that plaintiff was entitled to a contribution by defendant for his share of the moneys advanced by plaintiff for payment of taxes, encumbrances and improvements was not brought to the attention of the trial court. Accordingly, this court will not consider the point. We express no opinion on this subject.

 As stated in *Buck* v. *Canty*, 162 Cal. 226, 238 [121 P. 924], ''The case comes within the familiar rule that a judgment will not be reversed on appeal because of the failure of the lower court to give relief not embraced in the pleadings and which it was not asked to give, that is, in effect, for an error which the trial court did not make.''

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., White, J., and Tobriner, J., concurred.

Appellants' petition for a rehearing was denied October 24. 1962.