[No. B182257. Second Dist., Div. Six. May 9, 2006.]

LEONARD A. PRECIADO et al., Plaintiffs and Appellants, v. ELIZABETH R. WILDE, Defendant and Respondent.

## COUNSEL

Paul D. Deavenport and Vicki L. Fullington for Plaintiffs and Appellants.

Lowthorp, Richards, McMillan, Miller, Conway & Templeman and Charles J. Conway for Defendant and Respondent.

## OPINION

**GILBERT, P. J.**—Cotenants have equal possessory rights in land. For one cotenant to establish adverse possession against the other, more is required than to establish adverse possession against strangers.

Plaintiffs Leonard A. Preciado and Jennie R. Preciado appeal a judgment in favor of defendant Elizabeth R. Wilde on their quiet title action.[1] We conclude, among other things, that the Preciados did not establish title by adverse possession. We affirm.

### FACTS AND PROCEDURE

Leonard and Wilde, his niece, own two parcels of real property as tenants in common. A house originally stood on the first parcel (lot one) before it was demolished. The second parcel (lot three) is a vacant "back lot." Wilde owns an undivided three-tenths interest in each parcel, which she inherited from her father.

Wilde's grandmother lived in the house on lot one until her death in 1956. Thereafter Wilde's cousins resided there. In 1980, Wilde's father moved into the house and lived there until his death in 1984.

Leonard decided to purchase Wilde's interest in the properties for $11,604.60. On September 9, 2002, he wrote her a letter describing her ownership interest, which said: "Parcel (1) you own 2/10 + 1/10 = 3/10"; "Parcel (3) you own 2/10 + 1/10 = 3/10." Wilde and Leonard agreed on the price, but the sale did not take place because Leonard did not pay the purchase price.

The Preciados sued for quiet title based on adverse possession. They alleged, among other things, that Wilde had no interest and no title to the two parcels.

[1] We refer to Leonard A. Preciado by his first name, not out of disrespect, but to specify his actions and testimony.

*Trial*

Leonard testified that after Wilde's father died, he demolished the house on lot one, planted crops there, and the lot was "entirely" fenced in. The fencing was not built to exclude Wilde, and part of it had been built by her father. Leonard planted crops on "one-third" of lot three for personal consumption. He "erected" a fence there in the 1960's "to keep a horse on the property." But there are no horses there now. The fence eventually collapsed and was partially buried after he filled in holes on that lot. He discussed this "fill project" with Wilde's father before doing the work.

On cross-examination Leonard testified, without objection, that he tried to buy Wilde's interest in the two lots. When Wilde's counsel asked him about the September 9, 2002, letter, Leonard's counsel objected on the ground that it called for a legal conclusion. The court overruled the objection. Leonard testified that on September 9, 2002, he did not believe Wilde had a three-tenths interest in the two properties, but conceded his letter acknowledged her interest. He said he never excluded family members from the two lots and did not restrict Wilde's access to them. He never told Wilde that he contested her title.

Wilde testified that she and her father paid the property taxes on the two parcels from 1972 to 1984. She continued to pay the taxes after his death. In 1992, Leonard began paying those taxes. He resides in a house near these lots.

Wilde and Leonard discussed the dilapidated condition of the house Wilde's father had lived in. She agreed with Leonard's suggestion to demolish it.

Wilde also testified that Leonard never excluded her from the properties or told her she could not go there. She visited her father often when he lived there, and after his death she has gone there "a couple of times a year." She said Leonard offered to buy her interest in the two lots. The court overruled the Preciados' objection that this testimony involved inadmissible settlement discussions. (Evid. Code, § 1152.)[2]

On these facts the trial court found that the Preciados did not establish adverse possession. It also reasoned that Leonard's attempt to buy the lots from Wilde was "inconsistent with a claim of an ouster."

---

[2] All statutory references are to the Evidence Code.

## DISCUSSION

### I. *Elements of Adverse Possession*

█ The Preciados contend the evidence establishes the elements of adverse possession. "In an action to quiet title based on adverse possession the burden is upon the claimant to prove every necessary element: (1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner. (2) It must be hostile to the owner's title. (3) The holder must claim the property as his own, under either color of title or claim of right. (4) Possession must be continuous and uninterrupted for five years. (5) The holder must pay all the taxes levied and assessed upon the property during the period. [Citations.]" (*Dimmick v. Dimmick* (1962) 58 Cal.2d 417, 421 [24 Cal.Rptr. 856, 374 P.2d 824].)

█ But " '[w]here, as here, a claim of ownership by adverse possession is asserted against a cotenant additional principles become operative. . . .' [Citation.]" (*Russell v. Lescalet* (1967) 248 Cal.App.2d 310, 313 [56 Cal.Rptr. 399].) " '[E]ach tenant in common has a right to occupy the whole of the property. The possession of one is deemed the possession of all; each may assume that another in exclusive possession is possessing for all and not adversely to the others . . . .' " (*Dimmick v. Dimmick, supra,* 58 Cal.2d at p. 422.) " ' "Before title may be acquired by adverse possession as between cotenants, the occupying tenant must bring home or impart notice to the tenant out of possession, by acts of ownership of the most open, notorious and unequivocal character, *that he intends to oust the latter of his interest in the common property.* [Citations.] Such evidence must be stronger than that which would be required to establish a title by adverse possession in a stranger. [Citation.]" . . . In short, one tenant in common cannot by mere exclusive possession acquire the title of his cotenant. [Citation.]' " (*Russell, supra,* at p. 314, italics added; see also 6 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 16:32, p. 70.)

█ The Preciados failed to carry their burden. Wilde testified she had no notice that the Preciados wanted to interfere with her right to possession and title. Leonard admitted he never excluded Wilde from the property. He never restricted her access, or informed her he was challenging her ownership. He constructed fences, but admitted they were not designed to exclude family members, such as Wilde. He did not construct fences to completely surround lot three and conceded part of lot one was fenced in by Wilde's father.

Some of the changes Leonard made were remote in time or involved only a small area. He never used more than one-third of lot three. Other changes were not initiated until after he had consulted Wilde or her father, which refutes the claim of hostility.

Moreover, Leonard undermined his claim of adverse possession when he testified he tried to buy Wilde's interest. His September 9 letter is an admission that Wilde held legal title. It refutes the allegations of the Preciados' complaint and impeaches his credibility.

## II. *Offer to Buy Wilde's Interest*

The Preciados contend the court erred by admitting evidence about their offer to buy Wilde's interest. They argue their objection should have been sustained as the evidence involved an offer to compromise under section 1152. Section 1152, subdivision (a), states in relevant part: "Evidence that a person has, in compromise . . . offered or promised to furnish money . . . to another who has sustained or will sustain . . . loss or damage . . . is inadmissible to prove his or her liability for the loss . . . ."

■ Section 1152 deters "parties from making offers of settlement and . . . facilitate[s] candid discussion which may lead to settlement of disputes. [Citation.]" (*Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 481, fn. 3 [261 Cal.Rptr. 735].) It has no application here. Whatever may have been Leonard's thoughts, he and Wilde were not engaged in discussions to settle a dispute over her ownership. Leonard simply offered to buy Wilde's interest.

## III. *Other Issues*

The Preciados contend they should have prevailed on alternative grounds. They claim, among other things, that Wilde did not have title, she abandoned her interest, did not timely assert a claim to perfect it, and that they acted under color of title. But the trial court rejected these claims. It found Wilde inherited her tenancy in common interest and the Preciados did not prove their title or a claim based on color of title.

■ "In a quiet title action the plaintiff must prove his title in order to recover." (*Pacific States Sav. & Loan Co. v. Warden* (1941) 18 Cal.2d 757, 759 [117 P.2d 877].) Merely presenting evidence challenging the defendant's title is insufficient. (*Landini v. Day* (1968) 264 Cal.App.2d 278, 284 [70 Cal.Rptr. 260].) The Preciados have not shown that the court erred. Wilde introduced probate documents and a title expert's testimony to support the origins of her title and the validity of her interest as a tenant in common. Leonard admitted that Wilde's father had legally inherited his tenancy in common interest in the two lots. From Wilde's evidence, the court could reasonably infer she never abandoned the interest in the lots she inherited from her father.

■ The Preciados did not bear their burden of proof concerning their claims of title or color of title. Triers of facts exclusively decide the

credibility of witnesses. (*Biren v. Equality Emergency Medical Group, Inc.* (2002) 102 Cal.App.4th 125, 139 [125 Cal.Rptr.2d 325]; *Cody v. Von's Grocery Co.* (1961) 189 Cal.App.2d 329, 333 [11 Cal.Rptr. 277].) We have reviewed the Preciados' remaining contentions and conclude they have not shown reversible error.

The judgment is affirmed. Costs are awarded to respondent.

Coffee, J., and Perren, J., concurred.

A petition for a rehearing was denied June 5, 2006, and appellants' petition for review by the Supreme Court was denied August 16, 2006, S144442.