Filed 3/19/14  Opett v. Sharif CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL OPETT, | B247886 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BD542208) |
| v. | |
| FARAH SHARIF, | |
| Defendant and Appellant. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Christine Byrd, Judge.  Affirmed.

Farah Sharif, in pro. per., for Defendant and Appellant.

Girardi | Keese, Thomas V. Girardi and Lauren E.S. Horwitz for Plaintiff and Respondent.

_____

## INTRODUCTION

Farah Sharif appeals from the judgment dissolving her marriage to Michael Opett. Sharif contends the trial court erred in awarding Opett sole physical custody of their son and denying Sharif spousal support. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Sharif and Opett were married on February 8, 2005, and separated on March 28, 2011. They have one child, Aiden Opett, born April 20, 2007.

Opett is a high school graduate. He works as a "starter" at a country club, earning between $3,000 and $3,200 per month, plus an annual holiday bonus from the members. He does not receive significant income from tips.

Sharif has an Associate of Arts degree in accounting. She formerly worked as an accountant at the same country club where Opett works, but was forced to quit due to an illness she contracted during the marriage. At the time of trial, Sharif was receiving disability benefits of about $1,800 per month, plus $800 in rent from a roommate. She affirmed she has the ability to work and was seeking a job.

During the marriage, Sharif became very ill with swine flu. She was hospitalized for a lengthy period of time, part of which she spent in a coma. The illness caused permanent injury to her lungs, resulting in her toes being amputated due to the low oxygen levels. During her hospitalization and after her release, Sharif took high doses of narcotic pain killers, including morphine and dilaudid. At the time of the parties' separation, Sharif continued to take high doses of dilaudid and also drank alcohol. In 2012, the year after separation, Sharif began taking methadone as a substitute for dilaudid; however, she made frequent visits to the hospital complaining of pain, for which she received dilaudid. At the time of trial, Sharif testified she was taking approximately 10 different medications on a regular basis, including methadone.

The parties' separation was triggered by a domestic violence incident in which Sharif attacked Opett. A restraining order was issued.

On April 1, 2011, Opett filed a petition for dissolution of marriage. On March 18, 2013, the trial court conducted a one-day bench trial. The court heard testimony from the parties and three other witnesses, including Opett's mother, who lived with the parties during part of their marriage, Sharif's current roommate, and a friend of Sharif.

On March 22, 2013, the trial court issued its statement of decision. The court awarded Opett sole physical custody of Aiden. Sharif was granted supervised visitation for two hours per week. After considering each of the factors set forth in Family Code[1] section 4320, the court denied Sharif's request for spousal support. Sharif appealed.

### DISCUSSION

1.     *The Custody and Visitation Order*

"Under California's statutory scheme governing child custody and visitation determinations, the overarching concern is the best interest of the child. The court and the family have 'the widest discretion to choose a parenting plan that is in the best interest of the child.' " (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255 (*Montenegro*); § 3040, subd. (c).) Thus, " '[t]he standard of appellate review of custody and visitation orders is the deferential abuse of discretion test.' " (*Montenegro,* at p. 255.) "Generally, a trial court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best interests of the child." (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 299 (*Chalmers*).)

"In reviewing any order or judgment we start with the presumption that the judgment or order is correct, and if the record is silent we indulge all reasonable inferences in support of the judgment or order." (*Chalmers, supra,* 213 Cal.App.4th at p. 299.) Under this test, a " ' "showing on appeal is wholly insufficient if it presents a state of facts, a consideration of which, for the purpose of judicial action, merely affords an opportunity for a difference of opinion. An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear

---

[1]     All statutory references are to the Family Code.

that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice . . . ." [Citation.]' " (*Ibid.*)

In determining the best interest of the child, relevant factors include the health, safety and welfare of the child, any history of abuse by one parent against the child or the other parent, the nature and amount of contact with the parents and any substance abuse by either parent. (§ 3011.) When making orders regarding physical custody or visitation, the Legislature has declared the primary consideration shall be the child's health, safety and welfare. (§ 3020, subd. (a).) Shared parenting is not appropriate if the health, safety and welfare of the child cannot be assured. (§ 3020, subd. (c).)

The trial court found Sharif engaged in habitual and continual abuse of prescribed medications and alcohol, physically abused Opett, and sometimes placed Aiden in physical danger due to her inattentiveness. These findings were supported by the evidence and are sufficient to sustain the court's conclusion that shared custody would not be in Aiden's best interest. Among other things, the court cited hospital records showing numerous emergency room visits by Sharif (as many as three visits in one month) where she complained of pain to obtain dilaudid. Sharif initially denied using dilaudid in the past year, and only admitted to continued use of the narcotic when she was confronted with the hospital records. Sharif also admitted that at least one doctor refused to give her a prescription for dilaudid because he had concerns about possible narcotic abuse. The court also cited the two-year restraining order Opett obtained against Sharif due to an incident of domestic violence and testimony by Sharif's roommate and Opett's mother, both of whom testified Sharif became angry and violent when she was under the influence. Additionally, Opett's mother testified Sharif sometimes left Aiden alone or fell asleep when she was supposed to be supervising the child. Based on this evidence, the trial court could reasonably conclude Aiden's health, safety and welfare would be at risk if he were placed in Sharif's custody.

4

On appeal, Sharif challenges the credibility of the evidence cited by the trial court and points to other evidence she argues supports a different conclusion. Credibility determinations and the resolution of disputed facts are the province of the trial court. As we stated, an appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge on these issues. Here, the record reflects the trial court's conscientious consideration of the factors set forth in section 3011. Because the trial court's factual findings on each of those factors are supported by the evidence, we cannot say the court abused its discretion in awarding sole physical custody to Opett.

2. *The Denial of Spousal Support*

In a dissolution proceeding, "the court *may* order a party to pay for the support of the other party an amount, for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage," and the statutory guidelines set forth in section 4320. (§ 4330, subd. (a), italics added; *In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 93.) Spousal support is not mandatory. (See *In re Marriage of Meegan* (1992) 11 Cal.App.4th 156, 161; § 4330, subd. (a).) Rather, it is something that must be determined according to the needs of both parties and their respective abilities to meet those needs. (*In re Marriage of Meegan*, at p. 161; see § 4320.) "In making its spousal support order, the trial court possesses broad discretion so as to fairly exercise the weighing process contemplated by section 4320, with the goal of accomplishing substantial justice for the parties in the case before it." (*In re Marriage of Kerr*, at p. 93.) The trial court abuses its discretion only when it can be said that no judge reasonably could have made the same order. (*In re Marriage of Meegan*, at p. 161.) " 'Because trial courts have such broad discretion, appellate courts must act with cautious judicial restraint in reviewing these orders.' " (*In re Marriage of Kerr*, at p. 93.)

In its statement of decision, the trial court discussed each of section 4320's factors and specified the evidence supporting its decision not to award Sharif spousal support. Among other things, the court found both parties had similar incomes—$3,200 per month for Opett, $2,600 for Sharif—and both were able to maintain a standard of living similar to that which they enjoyed during marriage after Sharif's illness; although the court

5

acknowledged Opett had additional assets that would aid him in paying a support order. (See § 4320, subds. (a), (c), (d), (e).)  The court also considered Sharif's ongoing health problems, but found her condition did not impair her earning capacity as an accountant. (See § 4320, subds. (b), (f), (g), (h), (l).)  As the court noted, Sharif testified she was capable of working, notwithstanding her health condition, and was currently seeking employment.

Sharif appears to argue the court failed to consider her poor health and points to other evidence she claims establishes Opett has resources to enjoy luxuries she cannot afford.  As noted, the court acknowledged the toll Sharif's serious bout with swine flu took on her health, but concluded, based on Sharif's testimony, that it did not impair her ability to earn an income similar to Opett's.  The statement of decision also shows the trial court weighed Opett's additional assets, together with all other factors to be considered under section 4320, and concluded awarding spousal support to Sharif would not accomplish substantial justice.  Among other things, the court noted this was a short-term marriage of six years and two months, Sharif had not contributed to Opett's education or training, and Sharif was subject to a domestic violence restraining order entered after she physically attacked Opett.  (See § 4320, subds. (b), (f), (i).)  Based on the record presented, we cannot say the trial court abused its discretion.  (See *In re Marriage of Kerr, supra,* 77 Cal.App.4th at p. 93.)

3. *Other Relief Requested on Appeal*

In addition to challenging the trial court's custody and spousal support determinations, Sharif also requests that this Court make original orders pertaining to health insurance coverage, reallocation of social security child support payments, and attorney fees.  Sharif concedes this relief was not requested in the trial court.  As such, we cannot grant the relief for the first time on appeal.  (Cf. *Dimmick v. Dimmick* (1962) 58 Cal.2d 417, 423  [" 'a judgment will not be reversed on appeal because of the failure of the lower court to give relief not embraced in the pleadings and which it was not asked to give' "].)

## DISPOSITION

The judgment is affirmed.  Michael Opett is entitled to his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

CROSKEY, J.

7