Filed 5/22/15  Hightower v. Flowers CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| GEORGE W. HIGHTOWER,<br><br>        Cross-complainant and Appellant,<br><br>v.<br><br>MARY A. FLOWERS,<br><br>        Cross-defendant and Respondent. | B253697<br><br>(Los Angeles County<br>Super. Ct. No. BC470927) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Terry A. Green, Judge.  Affirmed.

Goodson, Wachtel & Petrulis, Kenneth G. Petrulis and Jennifer F. Hudson; Orren & Orren, Tyna Thall Orren, for Defendant and Appellant.

Paul Kujawsky for Plaintiff and Respondent.

\* \* \* \* \* \*

Shortly after a man and woman purchased a home as tenants in common, she hit him in the head with a lamp, evicted his daughter, and refused to let him return. They subsequently exchanged letters for a few years regarding the property, but the letters trailed off with no resolution. The woman remained in sole control of the house for nearly 20 years after the last letter, paying the taxes, mortgage, and all expenses. The trial court ruled that she acquired title to the house by adverse possession. The man appeals, but we conclude there was no error and affirm.

## FACTUAL AND PROCEDURAL HISTORY

### I.      Facts

In 1986, Mary Flowers (Flowers) and George Hightower (Hightower) decided to buy a house in the Hancock Park neighborhood of Los Angeles. Although Flowers was hurt and angered to learn—in the middle of closing on the house—that Hightower was married to someone else, the two nevertheless went forward with the purchase and took title as tenants in common.[1]

In May 1987, Hightower and Flowers got into an argument that ended when Flowers struck Hightower in the head with a crystal lamp and threatened him with serious bodily harm if he ever returned. Shortly thereafter, Flowers evicted Hightower's daughter from the property by depositing all of her belongings onto the driveway, and went on to change the security gate code and to change all the locks without giving Hightower the keys.

From that day on, Flowers did not let Hightower back onto the property except for a couple of closely "chaperon[ed]" visits in the late 1980's and 1990's, and denied his requests to live in the guest house on the property and to use the property for his daughter's wedding. Early on, Hightower made partial tax payments and paid some upkeep costs (and also claimed to have made undocumented mortgage payments) on the property, but his financial contribution stopped in 1989. Consistent with this, Hightower

---

[1]      The initial deed erroneously vested title solely in Flowers, but she executed a second deed correcting the error.

took no income tax deductions for property tax payments. From 1989 onward, Flowers made all mortgage payments, paid all property taxes and maintenance costs, and managed the rentals of the property; she did not share any revenue from the property with Hightower.

After their altercation, Flowers (with Hightower's concurrence) rented the house to a third party and identified Hightower as a co-owner in a 1989 action to evict the renters. In 1988 and 1989, Flowers and Hightower (or their attorneys) exchanged a number of letters discussing the rental as well as the possibility of having Flowers buy out Hightower's interest or of selling the house jointly. Although Hightower's early letters in 1988 asserted that he "did not authorize[]" Flowers' exclusive possession of the property, by 1989, no agreement was reached and Hightower came to believe that Flowers was never going to buy out his interest and that she was engaged in a "scam to get the house for herself." Flowers' attorney sent Hightower a final letter in 1993 indicating that Flowers sought to dissolve their "partnership" by mutual agreement or by a partition action. Hightower had only vague recollections of post-1993 oral conversations with Flowers about the property.

## II.   Procedural history

In 2011, Flowers sued Hightower for partition of the property and an accounting of what he owed her for the mortgage, tax and upkeep payments on the property for the 24 years since she took possession. Hightower cross-complained, ultimately seeking both (1) partition and (2) an accounting of her profits on the property, based on the fact that her conduct in 1987 and subsequent exclusive possession of the property "ousted" him and entitled him to payments on the property. As the litigation progressed, Flowers sought to change her litigation theory: Rather than treat Hightower as a cotenant who owed her money, she tried to quiet title to the property by adverse possession. However, the trial court did not allow her to amend her complaint or to file a cross-cross-complaint to assert this new theory. Flowers eventually dismissed her original complaint, and the complaint she filed in a separate but related action was also dismissed

3

Hightower continued to litigate his cross-complaint. The trial court granted Flowers' motion for judgment on the pleadings as to Hightower's ouster-based claim for an accounting, finding that the claim was barred by the statute of limitations. The parties proceeded to a bench trial on Hightower's partition claim, and Flowers was permitted to raise adverse possession as an affirmative defense.

The trial court issued a detailed ruling, concluding that Flowers had acquired title by adverse possession and consequently denying relief to Hightower on his partition claim. The court recognized that a necessary precondition to adverse possession between cotenants is the ouster of one by the other. The court observed that it was "difficult to conceive of a stronger ouster claim" than the one presented by Flowers' 1987 assault and threats, eviction of Hightower's daughter, and lock changes, but noted that the subsequent exchange of letters was "absolutely inconsistent with the notice of ouster" and thus muddied the clarity of the ouster. However, once the letters stopped in 1993, Flowers' intention to take the property for herself once again became clear and the requisite five years of continuous and hostile possession necessary for adverse possession began.[2] At that point, Hightower, a lawyer himself, "abandoned the property" by not making any demands or filing any lawsuit for another 18 years.

The court denied Hightower's subsequent motion for reconsideration, and entered judgment quieting title in Flowers by adverse possession, subject to an existing bank loan and a $38,000 deed that Flowers had executed in 1987 to equalize her down payment with Hightower.

Hightower timely appeals.

---

[2] Hightower urges us to consider the trial court's earlier, midtrial comments that seemingly gave dispositive weight to Flowers's acknowledgement of Hightower's co-ownership in the years immediately following the ouster. But the trial court elsewhere noted why such acknowledgment was not dispositive. More to the point, we are tasked with reviewing the trial court's final ruling made after consideration of all the evidence, not its interim and still-evolving observations.

4

## DISCUSSION

### I.    Adverse possession

To acquire title to property owned by another through adverse possession, the would-be adverse possessor must establish (1) that she "[a]ctual[ly] occup[ied]" the property "under such circumstances as to constitute reasonable notice to the owner," (2) that her possession was "hostile to the owner's title," (3) that she "claim[ed] the property as [her] own, under either color of title or claim of right," (4) that her possession was "continuous and uninterrupted for five years," and (5) that she paid "all the taxes levied and assessed upon the property during the period." (*Dimmick v. Dimmick* (1962) 58 Cal.2d 417, 421; Code Civ. Proc., §§ 322-325; Civ. Code, § 1007.) All the elements must be present during all five years of continuous and uninterrupted possession. (*Zolezzi v. Michelis* (1948) 86 Cal.App.2d 827, 832 (*Zolezzi*); *Estate of Hughes* (1992) 5 Cal.App.4th 1607, 1615.)

The bar is higher when the property owner and would-be adverse possessor are cotenants on the property. (*Preciado v. Wilde* (2006) 139 Cal.App.4th 321, 322, 325 (*Preciado*); *Hacienda Ranch Homes, Inc. v. Superior Court* (2011) 198 Cal.App.4th 1122, 1128 (*Hacienda Ranch Homes*).) Because cotenants enjoy "equal possessory rights in land," including the right to occupy the property exclusively (*Preciado*, at pp. 322, 325), there is nothing remarkable—and, more to the point, nothing *adverse*—about one cotenant occupying a jointly owned property. Thus, to put a cotenant on notice that the would-be adverse possessor's occupation is hostile, the would-be adverse possessor must first "oust" her cotenant. (*Id.* at p. 325; *Hacienda Ranch Homes*, at p. 1128.) "Ouster" is shorthand for a "cotenant's unambiguous conduct that manifest[s] an intent to exclude another cotenant from gaining or sharing possession of jointly owned property" (*Estate of Hughes*, *supra*, 5 Cal.App.4th at p. 1613), or that "bring[s] home or impart[s] notice to the tenant out of possession, by acts of ownership of the most open, notorious, and unequivocal character, that [she] intends to oust the latter of his interest in the common property" (*Preciado*, at p. 325; *Johns v. Scobie* (1939) 12 Cal.2d 618, 623-624). Ouster may be effected through "a diversity of methods" (*Carpentier v. Webster* (1865)

27 Cal. 524, 561-563 (*Carpentier*)), ranging from invoking the statutory notice procedure for ouster (Civ. Code, § 843) to "'claiming the whole for himself, denying the title of his companion, or refusing to permit him to enter'" (*Hacienda Ranch Homes*, at p. 1128, quoting *Zaslow v. Kroenert* (1946) 29 Cal.2d 541, 548 (*Zaslow*)).

Hightower challenges the trial court's ruling that Flowers adversely possessed the property. He does not on appeal dispute the trial court's findings that Flowers possessed the property continuously for five years; that she paid all the taxes starting in 1989; or that she claimed the property as her own under color of title or claim of right. Hightower does not even dispute that Flowers' actions in 1987 constituted an ouster by evincing an unequivocal and hostile intent to exclude him that put him on notice. (Accord, *Zaslow*, *supra*, 29 Cal.2d at p. 548 [denying title, changing locks, posting "no trespassing" signs, and denying admission; ouster established].) (Indeed, Hightower *cannot* dispute the facts supporting the ouster, as he pled them in his cross-complaint and he is bound by those judicial admissions. (*Mark Tanner Construction, Inc. v. HUB Internat. Ins. Services, Inc.* (2014) 224 Cal.App.4th 574, 586-587.)) Had the interaction of the parties stopped there, Flowers would have acquired title by 1994—five years after she started paying all the taxes in 1989.

But the parties went on to exchange letters regarding the property in 1988 and 1989, and again in 1993 when Flowers sent her final missive. (Hightower's further oral communications with Flowers were "just vague references" that were of no legal consequence.) The question then becomes: How do the letters affect Flowers' proof of adverse possession?

The parties offer diametrically opposed—and, in our view, incorrect—views. Hightower argues that Flowers' acknowledgment in the letters and in her original cross-complaint that he was a cotenant entirely negates the ouster she otherwise effected in 1987. We are unpersuaded. A would-be adverse possessor "must, of necessity, admit that title to the property resides in the person against whom [she] makes the claim" (*Tobin v. Stevens* (1988) 204 Cal.App.3d 945, 953); if, as Hightower urges, acknowledgment of a cotenant's title defeats adverse possession, the claim of title or right

6

element and the hostile possession element of adverse possession would be in irreconcilable conflict with each other.  It is accordingly no surprise that courts have long treated a would-be adverse possessor's recognition of her cotenant's title simply as probative evidence cutting against a finding of hostile possession rather than conclusive evidence entirely defeating her claim for adverse possession.  (*Zolezzi*, *supra*, 86 Cal.App.2d at p. 832; *Carpentier*, *supra*, 27 Cal. at pp. 561-563 ["a mere verbal admission of that [title] right cannot defeat an ouster wrought out upon other and sufficient grounds"].)

Flowers contends that her ouster and possession for five years was enough by itself to quiet title in her, irrespective of any showing that the possession be hostile.  To be sure, a cotenant who is ousted has five years to file suit for an accounting of the rental value of the property.  (*Estate of Hughes*, *supra*, 5 Cal.App.4th at pp. 1611-1615; Code Civ. Proc., § 319.)  Ouster simultaneously starts the clock on the five years necessary for adverse possession.  (*Id.* at p. 1615.)  But, as noted above, ouster does not relieve the would-be adverse possessor of her obligation to prove all of the other elements of adverse possession.  (*Ibid*; *Zolezzi*, *supra*, 86 Cal.App.2d at p. 832.)  In other words, ouster is a necessary but not sufficient precondition to adverse possession between cotenants. Hightower argues that the trial court followed this particular line of reasoning, but we disagree with his reading of the trial court's ruling.

The propriety of the trial court's resolution of this case turns on whether Flowers' conduct in 1987, considered with the subsequent exchange of letters, satisfied the still contested elements of adverse possession—namely, whether Flowers' occupation imparted reasonable notice to Hightower of the hostility of her possession.  The trial court found that it did.  Where, as here, the facts as to what happened are undisputed and what is at issue is whether those facts amount to an ouster or otherwise satisfy the elements of adverse possession, our review is de novo.  (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018 [application of law to undisputed facts; de novo review]; *Hacienda Ranch Homes*, *supra*, 198 Cal.App.4th at p. 1128 [ouster; de novo review].)

7

First, Flowers' 1987 assault, threat, eviction and lock changing conveyed ample notice of Flowers' hostile possession. This is the backdrop against which we must assess the effect of the subsequent letters. The letters certainly reaffirmed Hightower's half-interest in the property and discussed possible ways to cash out that interest, but the letters then stopped without any agreement or resolution. Although, as the trial court noted, the letters may have created some uncertainty while their exchange was ongoing, once that exchange ended, Flowers continued to pay all taxes and expenses and the parties went back to the post-1987 status quo of Flowers in exclusive possession and denying Hightower entry. Indeed, Hightower recognized as much, frankly admitting that, by 1989, he knew Flowers was too interested in "scam[ming]" him out of the property to buy him out. (See *Ankoanda v. Walker-Smith* (1996) 44 Cal.App.4th 610, 618 [in adverse quiet title action between cotenants, "there is simply no sound policy reason to toll the statute of limitations in this case beyond the time when [nonoccupying cotenant] learned that [occupying cotenant] was not going to reconvey the portion of the property that had been deeded to her"].)

Second, the trial court's ruling is consistent with the purpose of adverse possession. Adverse possession seeks to ensure the productive use of land by creating a stark incentive for property owners to assert their rights or risk losing their property to someone who *is* making good use of it. (*Oglesby v. Hollister* (1888) 76 Cal. 136, 142; see generally Civ. Code, § 3527 ["The law helps the vigilant, before those who sleep on their rights."].) Hightower is a sophisticated lawyer who, after being ousted by his cotenant Flowers, knowingly let her exclusively occupy and pay all taxes and costs on the Hancock Park property for nearly a quarter century before filing a legal claim. "[A]n entire arsenal of legal options was available to [him] to protect [his] right to the property," (*California Maryland Funding, Inc. v. Lowe* (1995) 37 Cal.App.4th 1798, 1803-1807), but Hightower instead chose to do nothing.

## II. Remaining claims

Hightower raises three other claims, none of which has merit.

First, he argues that the trial court did not recognize its discretion to reject Flowers' adverse possession claim. Although the trial court indicated its reluctance to rule in Flowers' favor given its finding that her testimony was not credible, the court ruled as it felt "the facts and the law demand." This does not reflect a trial court ignorant of its discretion; it shows a trial court following the law. There was no error.

Second, Hightower asserts that the trial court erred in not specifically ruling on whether Flowers had a hostile intent. But the trial court made a finding regarding hostility, once that term is properly defined. Hostility does not refer to the would-be adverse possessor's subjective, specific intent. Instead, "'hostility' . . . means . . . that the claimant's position must be adverse to the record owner." (*Sorenson v. Costa* (1948) 32 Cal.2d 453, 459.)

Third, Hightower complains that the trial court erred in not specifically ruling on whether Flowers should be equitably estopped from seeking adverse possession based on her acknowledgment in the letters of Hightower's half-interest. This complaint also lacks merit. Equitable estoppel requires (1) ""'a representation or concealment of material facts,"''' (2) ""'made with knowledge, actual or virtual, of the facts,"''' (3) ""'to a party ignorant, actually and permissibly, of the truth,"''' (4) ""'with the intention, actual or virtual, that the ignorant party act on it,"''' and (5) ""'that the party was induced to act on it."''' (*Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.* (2014) 231 Cal.App.4th 1131, 1149.) Flower's discussions, in the letters, about buying out Hightower's interest do not involve the concealment of any fact of which Hightower was unaware— Hightower knew of the 1987 incident and, as noted above, the letters at most created a temporary and potential ambiguity regarding the legal effect of that incident. More importantly, this argument effectively restates Flowers' earlier argument—rejected by the trial court—that a would-be adverse possessor's acknowledgment of the owner's title

9

precludes adverse possession.  As detailed above, there are compelling reasons to reject this argument no matter how it is presented.

## DISPOSITION

The judgment is affirmed.  Flowers is entitled to her costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                    HOFFSTADT

We concur:


_____, P. J.
          BOREN


_____, J.
        ASHMANN-GERST