Filed 8/17/20  Morgan v. Druhet-Johnson CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| ERNEST MORGAN,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MIRIAM Y. DRUHET-JOHNSON, et al.,<br><br>        Defendants,<br><br>DESHONNE DRUHET,<br><br>        Defendant and Appellant. | A157790<br><br>(San Francisco<br>Super. Ct. No. CGC-17-558418) |

In 1973, three children—Harvey Druhet, Roger Druhet, Jr., and Estelle Hayes—inherited one-third shares of a San Francisco property as tenants in common.  Harvey Druhet and his wife Annette Morgan-Druhet subsequently occupied the property for several decades, until their deaths.  In 2017, Annette's son Ernest Morgan, as administrator of her estate, brought suit seeking to quiet title to the property, and successfully moved for summary judgment on the ground that Harvey and Annette had acquired sole title to the property as against Roger and Estelle by adverse possession.[1]  Defendant

---

[1] For clarity, we will refer to certain of the parties involved by their first names.

Deshonne Druhet appeals, raising seven challenges to the trial court's rulings. We conclude that none of the challenges has merit, and we affirm.

## BACKGROUND

Roger Druhet, Sr. was the owner of a home located on Thornton Avenue in San Francisco (the property). In 1973, after Roger Sr.'s death, three of his children—Harvey, Roger Jr., and Estelle—each inherited one-third shares of the property as tenants in common. At that time, Harvey was married to Annette and living in San Diego. Roger Jr. and Estelle were living in New Orleans.

Shortly after Harvey inherited his interest, he and Annette moved from San Diego into the property. And between 1973 and 2014, Harvey and Annette lived exclusively and continuously at the property, holding themselves out to the public as its only owners. They paid the various expenses associated with the property, including the mortgage, utilities, insurance, property taxes, maintenance, and improvements. They received mail and deliveries at the property and parked their vehicles there. Annette also ran her interior design business from the property. Harvey died in 2009, and Annette in 2014.

Meanwhile, Estelle died in 1997, and Roger in 2001.

Plaintiff Ernest Morgan was Annette's son, and Harvey's stepson. After his mother's death in 2014, he became administrator of her estate. In that capacity, on April 27, 2017, he filed the instant action in San Francisco Superior Court, naming as defendants Miriam Y. Druhet-Johnson, the administrator of Harvey's estate, as well as the testate and intestate successors of Roger and Estelle. The suit sought declaratory relief and to quiet title to the property.

2

Miriam filed an answer to the complaint. Seven of Roger's children and grandchildren, including his granddaughter appellant Deshonne Druhet (when referred to collectively, defendants), filed a separate answer and also a cross-complaint for partition, trespass, quantum meruit, and unjust enrichment.

On September 26, 2018, Morgan moved for summary judgment, on the basis that Harvey and Annette had acquired sole title to the property by adverse possession. In support of the motion, Morgan attached his own declaration, with six exhibits that Morgan testified he had found among his mother's papers.

The first exhibit was a letter dated July 20, 1979, from Harvey to Roger. The letter referred to an agreement between Harvey and Roger, stating that Harvey had paid off the mortgage and property tax payments on the property, and that "upon completion of mortgage payments I would pay each of you ten thousand dollars ($10,000) purchasing your interest in the property." The letter further provided that an installment payment of $2,000 would be made "upon receipt of signed agreement," with monthly payments of at least $150 to follow. The agreement was signed by Harvey and Roger, and notarized in San Francisco on July 30, 1979.

The second exhibit was a check register, listing a beginning balance of $10,000, an initial payment of $2,000 dated August 7, 1979, followed by monthly payments of $200 each month thereafter, all to "R. Druhet," with the final $200 payment made December 7, 1982.

The sixth exhibit was a letter to Harvey dated June 29, 1979, from William J. Guste, III, an attorney representing Estelle, stating that Harvey had not responded to Guste's previous letter of June 6 and asking Harvey to "be advised that if I have not heard from you by July 14, 1979, we will engage

3

San Francisco counsel to take whatever legal action may be necessary to protect our client's interest."

Morgan's declaration also included the following paragraphs:

"5.  In late 1982, Harvey and Annette threw a large party at the Property and invited all of their close friends.  The express purpose of the party was to celebrate their having finalized the purchase of Roger, Jr. and Estelle's interests in the Property, thus becoming the sole owners of the Property.  I worked the party as a bartender at my parents' request.  While there, I spoke with Harvey and Annette about their purchase of the Property. Annette and Harvey were so happy and conveyed to me that they were pleased to have reached agreements with Roger, Jr. and Estelle to purchase their interests in the Property."

"6.  Between 1973 and 2014, Harvey and Annette lived continuously at the Property.  At all points in time they held themselves out to the public as the true and only owners of the Property.  They actually, continuously, and exclusively resided at, occupied, controlled, and exercised all ownership rights to the Property by, among other things, living there on a day-to-day basis, paying the mortgage, utilities, and insurance, receiving mail and deliveries there, parking their vehicles there, maintaining and making improvements to the Property, and paying all taxes assessed against the Property.  Their claimed ownership, occupancy, and use of the Property was readily visible for anyone to see.  Annette even ran her interior design business out of the Property."

"8.  Estelle was in town visiting from New Orleans.  During her stay at the Property, she set fire to the living room floor.  Following this incident, she was asked to leave the Property by Harvey and Annette and not come back. To my knowledge, she never returned to the Property after that visit."

4

The motion was set for hearing on December 17, 2018.

On November 21, defendants moved ex parte to continue the hearing pursuant to Code of Civil Procedure section 437c, subdivision (h), on the ground that "facts essential to justify opposition may exist but cannot, for reasons stated, be presented," allegedly due to Miriam's failure to respond to document requests served on her by Morgan in late July.

Following oral argument, the trial court granted the request and continued the hearing until March 14, 2019.  However, the trial court further ordered that defendants' opposition be filed in accordance with the original December 17, 2018 hearing date, with a supplemental opposition limited to "new information obtained from Miriam" to be filed based on the new March 14, 2019 hearing date.  Plaintiff's reply was then to be filed based on the new hearing date.  Defendants objected to this schedule.

On November 30, defendants filed opposition to the motion.  In support were attached two virtually identical declarations from Deshonne and Roger Jr.'s son Emile.  Emile's declaration provided in part that:

"18. My father, ROGERS [*sic*] DRUHET, JR. (II) never sold his interest in the Property to anyone, and I can categorically state that as my father's son, I was in a position to know that he did not.

"19. My aunt, ESTELLE HAYES *née* DRUHET never sold her interest in the Property to anyone, and I can categorically state that as my aunt's close nephew, I was in a position to know that she did not."

"21. My aunt, ESTELLE HAYES *née* DRUHET, was never excluded or refused entry to the Property by anyone and was certain[ly] not by her very brother, HARVEY DRUHET or his second wife."

Similarly, Deshonne's declaration provided:

5

"22. My great-aunt, Estelle Hayes *née* Druhet never sold her interest in the Property to anyone, and I can categorically state that, as my aunt's favorite great-niece, I was in a position to know that she did not.

"23. Neither my father, Rogers Druhet, III, nor my grandfather, Rogers [*sic*] Druhet, Jr. (or II) was ever excluded or refused entry to the Property by anyone and Rogers [*sic*] Druhet, Jr. (or II) was certainly not ever denied entry by his very brother, Harvey Druhet or his second wife.

"24. My great-aunt, Estelle Hayes *née* Druhet, was never excluded or refused entry to the Property by anyone and was certainly not ever denied entry by her very brother, Harvey Druhet or his second wife."

Defendants' supplemental opposition was due February 28, 2019. Defendants served Miriam with written discovery on January 29, and on February 26, defendants' counsel filed a declaration indicating that Miriam had not yet responded to their requests.

On March 7, Miriam filed a "Notice of Non-Opposition" to Morgan's motion for summary judgment, and a declaration in support thereof. Her declaration stated that it was "[her] understanding that Roger, Jr. and Estelle agreed to sell their interest in the Property to Harvey and Annette," and that she did "not oppose Plaintiff's effort to clear up the title error and in fact, I support it. Title to the Property should be held by Harvey and Annette."

No supplemental opposition to the motion was ultimately filed by defendants.

Plaintiff filed his reply, and the motion came on for hearing on March 14, in advance of which the trial court issued a tentative ruling granting the motion. After the hearing, the trial court adopted its tentative

6

ruling in a written order, granting the motion and concluding in part as follows:

"Harvey and Annette ousted Roger, Jr. as a co-tenant by virtue of their purchase of his interest in the Property.  [Citation.]  Harvey and Annette ousted Estelle as a co-tenant by virtue of their purchase of her interest in the Property, requesting she physically leave the Property, and Estelle's attorney threatening litigation to protect her interest in the Property.  [Citation.]"

Judgment was subsequently entered quieting title to the property in Harvey and Annette, from which Deshonne alone appealed.

## DISCUSSION

Deshonne raises seven arguments on appeal:  (1) the trial court erred in extending the deadline for defendants' response to the motion only with respect to newly obtained discovery from Miriam; (2) the trial court erred in not striking Miriam's notice of non-opposition to the motion; (3) Deshonne and Emile's declarations in support of the opposition to the motion created triable issues of fact; (4) Morgan failed to establish that Harvey and Annette's possession of the property was hostile to Roger and Estelle; (5) the trial court abused its discretion in overruling defendants' evidentiary objections to the exhibits attached to Morgan's declaration; (6) certain of the statements in Morgan's declaration were inadmissible hearsay; and (7) certain statements in Miriam's declaration were inadmissible hearsay.

### *Deshonne Was Not Prejudiced by the Briefing Schedule*

Deshonne's first argument is that by ordering Morgan to file only one reply brief addressing both defendants' November opposition and their March supplemental opposition based on any discovery obtained from Miriam, the trial court unfairly gave Morgan approximately an extra three months to respond to the November opposition, instead of the typical nine-day period.

7

(See Code Civ. Proc., § 437c, subds. (b)(2) & (b)(4).)  But Code of Civil Procedure, section 437c, subdivision (b)(4) provides that any reply shall be served and filed "not less than five days preceding the noticed or continued date of hearing, unless the court for good cause orders otherwise," so the briefing schedule set by the trial court was not prohibited by that section. Beyond that, Deshonne has not even attempted to show that defendants were prejudiced by the briefing schedule, and "[a]bsent an explicit argument that a procedural error caused prejudice, we are under no obligation to address the claim of error."  (*Quail Lakes Owners Assn. v. Kozina* (2012) 204 Cal.App.4th 1132, 1137; see Cal. Const., art. VI, § 13 [reversal for a procedural error requires a "miscarriage of justice"].)

### *The Trial Court Did Not Rely on Miriam's Notice or Declaration*

Deshonne argues that the trial court should have struck Miriam's "Notice of Non-Opposition" to Morgan's motion (argument two), and that certain statements in Miriam's accompanying declaration were inadmissible hearsay (argument seven).  We need not consider these arguments, because Deshonne has failed to articulate any prejudice from the alleged errors relating to Miriam's declaration—a point made in Morgan's brief, to which Deshonne did not file a reply.  The trial court's written order, including its description of the material facts and specific evidence relied upon in granting the motion, makes no mention of Miriam's notice or her declaration, and instead bases its conclusions on Morgan's declaration and the exhibits attached thereto.

### *Deshonne's Evidentiary Objections to Morgan's Declaration Fail*

We turn next to Deshonne's evidentiary objections to Morgan's declaration in support of his motion, arguments numbered five and six. Deshonne first argues that the six exhibits to the declaration were

8

improperly admitted, asserting that the documents were "cherry-picked," and are "self-serving, vague, ambiguous, and incomplete." Passing over that most documents submitted by a party are "self-serving," and that "cherry-picked" is not a valid objection, Deshonne's objections are plainly meritless—indeed frivolous. To take one representative example, with respect to the check register, Deshonne's brief asserts "[i]f it is a check register, the question arises, where are the cashed checks which were returned to the couple's bank? Their absence speaks volumes." And, after noting that the final entry in the check register is dated December 7, 1982: "Morgan would have us believe, that the couple paid off Roger Jr. in 1982[], but in 32 years the couple never altered the title to the property to remove Roger Jr.'s name from it."[2] These are not even cognizable evidentiary objections, never mind meritorious ones.

Deshonne also contends that Morgan's declaration contained inadmissible hearsay. She points to Morgan's statement that Annette and Harvey were "so happy and conveyed to me that they were pleased to have reached agreements with Roger, Jr. and Estelle to purchase their interests in the property," and his statement that following the alleged incident in which Estelle set fire to the living room floor, Estelle was "asked to leave the Property by Harvey and Annette and not come back."

The first statement is arguably covered by the state of mind exception to the hearsay rule,[3] but even if not, the trial court made no mention of the

---

[2] Morgan's complaint alleged that the failure to transfer title to the property was "due to a clerical error."

[3] (See Evid. Code, § 1250, subd. (a) ["evidence of a statement of the declarant's then existing state of mind" admissible to "prove the declarant's state of mind, emotion, or physical sensation at that time" or to "prove or explain acts or conduct of the declarant"].)

9

statement in reaching its decision or in detailing the evidence it relied on, and Deshonne has not explained how the alleged error was in any way prejudicial. (See *Truong v. Glasser* (2009) 181 Cal.App.4th 102, 119 [on appeal of evidentiary rulings on summary judgment appellant must "articulate how the admission of that evidence was prejudicial"]; *In re Auto. Antitrust Cases I & II* (2016) 1 Cal.App.5th 127, 141–142.)

As to the second statement, a request or demand by Harvey and Annette that Estelle not return to the property is not hearsay because it was not offered to prove the truth of the matter asserted. (See *People v. Jurado* (2006) 38 Cal.4th 72, 117 ["Because a request, by itself, does not assert the truth of any fact, it cannot be offered to prove the truth of the matter stated"].)

### ***Defendants' Declarations Did Not Create Triable Issues of Fact***

Finally, we turn to Deshonne's two arguments on the merits, arguments three and four—arguments we review de novo. (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 370.)

First, Deshonne contends that the declarations submitted in support of defendants' opposition create a triable issue of fact. We disagree. To begin with, declarations are required to set forth "[e]videntiary facts," and "[c]onclusions of fact or law are not sufficient." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 10:119.) Beyond that, neither declaration offers any explanation for how Deshonne or Emile knew that Roger or Estelle never sold their interest in the property. They do not allege that either Deshonne or Emile ever discussed the property or its ownership with Roger or Estelle. And neither Emile nor Deshonne would reasonably be expected to know whether a 1979 sale of the property had taken place simply by virtue of their close family relationship. (See

10

*Moua v. Pittullo, Howington, Barker, Abernathy, LLP* (2014) 228 Cal.App.4th 107, 116 [" '[A]n issue of fact is not raised by "cryptic, broadly phrased, and conclusory assertions" [Citation.]' "]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 10:109 [personal knowledge " 'must be shown by facts set forth in the declaration, and not merely by conclusions. The matters alleged must be something about which the declarant has reason to know personally—as distinguished from matters of opinion or hearsay' "].) These conclusory declarations do not suffice to establish a triable issue.

Second, Deshonne argues that there was a triable issue of fact as to whether Harvey and Annette adversely possessed the property as against Roger and Estelle.

" ' " ' "Before title may be acquired by adverse possession as between cotenants, the occupying tenant must bring home or impart notice to the tenant out of possession, by acts of ownership of the most open, notorious and unequivocal character, that he intends to oust the latter of his interest in the common property. [Citations.] Such evidence must be stronger than that which would be required to establish a title by adverse possession in a stranger. [Citation.]" . . . In short, one tenant in common cannot by mere exclusive possession acquire the title of his cotenant. [Citation.]' " [Citations.]' (*Preciado v. Wilde* (2006) 139 Cal.App.4th 321, 325, italics omitted.)" (*Hacienda Ranch Homes, Inc. v. Superior Court* (2011) 198 Cal.App.4th 1122, 1128.)

Deshonne contends that Morgan failed to establish ouster, essentially by casting doubt on the statements in Morgan's declaration. She argues that the idea that Harvey and Annette failed to change the title of the property after the alleged purchases is "simply too absurd and farfetched to carry any

11

weight," and the description of the living room fire is "so obliviously [*sic*] contrived as to border on the absurd."  These arguments are simply challenges to Morgan's credibility, which standing alone are insufficient to defeat summary judgment.  (See Code Civ. Proc., § 437c, subd. (e) ["summary judgment shall not be denied on grounds of credibility . . . of witnesses furnishing affidavits or declarations in support of the summary judgment"].)

Finally, Deshonne argues that Harvey and Annette's offers to purchase Roger and Estelle's interests undermine their claim for adverse possession, relying on *Preciado v. Wilde*, *supra*, 139 Cal.App.4th 321.  There, the plaintiff brought a quiet title action against his niece, and at trial "admitted he never excluded [defendant] from the property," "never restricted her access, or informed her he was challenging her ownership," and that fences he constructed "were not designed to exclude family members, such as [defendant]."  (*Id.* at p. 325.)  The plaintiff had also written a letter to the defendant, offering to purchase her interest in the property.  (*Id.* at p. 323.)  The trial court found that the plaintiff had failed to establish adverse possession, in part because the plaintiff's offer to buy defendant's interest was " 'inconsistent with a claim of an ouster.' "  (*Id.* at p. 324.)  The Court of Appeal affirmed, noting that the plaintiff "undermined his claim of adverse possession when he testified he tried to buy [defendant's] interest.  His September 9 letter is an admission that [defendant] held legal title.  It refutes the allegations of [plaintiff's] complaint and impeaches his credibility."  (*Id.* at p. 326.)  But there is nothing similarly inconsistent about Morgan's position here, where he acknowledges that Roger and Estelle held interests in the property and alleges that Harvey and Annette effected an ouster in part by completing purchases of those very interests.

12

## DISPOSITION

The judgment is affirmed.  Morgan shall recover his costs on appeal.

_____
Richman, J.

We concur:

_____
Kline, P.J.

_____
Miller, J.

*Morgan v. Druhet-Johnson* (A157790)